506 P.2d 1199

In the Matter of the Seizure and Intended Forfeiture of ONE 1967 PETERBILT TRACTOR, SEMI–BODY STYLE, RED COLOR, TEXAS LICENSE #J61252, and One 1965 Utility Van Trailer, Silver Color, Texas License #Z62844, Vehicle Identification #E13114.

STATE of New Mexico, Appellee,

v.

ONE 1967 PETERBILT TRACTOR and One 1965 Utility Van Trailer; George R. DICKERSON, Real Party in Interest, Appellant.

No. 9413.

Supreme Court of New Mexico.

March 2, 1973.

Rose-Marie Gruenwald, Deming, for appellant.

David L. Norvell, Atty. Gen., Frank N. Chavez, Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

SANTIAGO E. CAMPOS, District Judge.

This is a proceeding to declare the forefeiture of a Peterbilt Tractor (hereafter tractor) and a Utility Van Trailer (hereafter trailer) coupled to and pulled by the tractor at the time of the incident in question. The proceeding was initiated by the district attorney of Luna County for forfeiture of vehicles used in the alleged illegal transportation of "dangerous substance." This was pursuant to §§ 54–7–26 and 54–7–26.1, N.M.S.A., 1953 Comp. (Repl.Vol. 8, 1971 Pocket Supp.). Notice of seizure and intended forfeiture was served on George R. Dickerson, the owner and driver of the tractor and the trailer. The forfeiture proceeding resulted from the finding and seizure by state policemen of "dangerous substance" being transported in the trailer. The "dangerous substance" was 214 bottles of pills and tablets all containing amphetamines. Some of these were also referred to as "dexedrine," a trade name for certain tablets containing amphetamines. The search leading to the seizure of the amphetamines was conducted without a search warrant and occurred before the arrest of either Dickerson or the lady in his company.

After answer to the notice was filed and hearing held, the trial court entered its order declaring a forfeiture of both the tractor and the trailer to the State of New Mexico. From this order Dickerson appeals. We affirm.

The following preceded the forfeiture proceeding. Approximately two weeks prior to August 28, 1971, Officer Pauley of the New Mexico State Police was contacted by an informant. The informant informed that a man named Dickerson was regularly transporting amphetamines on trips west from Texas through Deming. Officer Pauley was further told, at this time, that Dickerson made regular stops where he sold the amphetamines and, further, that Dickerson was always armed and dangerous. The informant advised Officer Pauley that the next time Dickerson was in the Deming area he would notify him.

On August 28, 1971, at approximately 3:00 p. m., Officer Pauley was called by telephone by the informant who stated that Dickerson was at McLain's Truckstop about 13 miles west of Deming. The informant described Dickerson as being between 45 and 50 years old; of short or

medium height, stockily built and that he had one bad eye. He further informed that Dickerson was traveling with a lady companion and that he would be armed with a pistol. The informant described the vehicle Dickerson was driving as a Red Peterbilt Truck pulling a silver-colored trailer and informed that Dickerson's name was located on the door. He further informed that Dickerson would have two suitcases full of amphetamines and that Dickerson would be leaving the truck stop and suggested that the officer get there immediately.

Officer Pauley accompanied by Officer Darby drove to the truck stop and observed the vehicle described by the informant. About 3:30 p. m., the officers went out on Interstate Highway 10 and did some patrolling, at all times, however, keeping the tractor and trailer under surveillance. As the reason for not apprehending Dickerson at the truck stop Officer Darby stated that they did not want to endanger others about the truck stop since they had information Dickerson was armed.

About 4:00 or 4:30 p. m., while still patrolling on the Interstate, and while still keeping the tractor and trailer under surveillance, Officers Pauley and Darby were contacted personally by the informant. At this time the informant informed that he had just observed Dickerson sell one case of "dexedrine" tablets and that these had been taken out of one of the two suitcases in Dickerson's possession.

The officers continued their surveillance of the tractor and trailer until about 7:30 p. m., when the tractor and trailer drove out from the truck stop and headed west on the Interstate. The tractor and trailer were stopped by Officers Pauley and Darby about two miles west of the truck stop. Dickerson was driving the tractor and his lady companion was in the tractor cab with him.

Without a search warrant, Officers Pauley and Darby conducted a search of the tractor and the trailer. A gun was found in the sleeper part of the cab of the trailer.

Officer Pauley obtained the keys to the door of the trailer from Dickerson and, after opening the padlocked door, he found two suitcases inside the drawer of a filing cabinet. The two suitcases contained the 214 bottles of tablets containing amphetamines.

After the tablets were found, Dickerson and his companion were placed under arrest and the tractor and trailer were taken into possession by the police.

In his principal point on appeal, appellant contends that the search leading to the seizure of the "dangerous substance" was unconstitutional in that no probable cause existed justifying the search. Violations of appellant's rights under the Fourth, Fifth and Sixth Amendments of the United States Constitution and Art. II, § 10, of the New Mexico Constitution are claimed.

■ It is contended by appellant, conceded by the State and accepted by this court that, notwithstanding this is not a criminal proceeding, it is, nevertheless, on the principal issue involved in this appeal of such a nature that it is proper to gauge it by the same standards applicable in a criminal proceeding. Thus, if the evidence supporting the forfeiture was obtained by an unconstitutional search and seizure, that evidence is inadmissible and the judgment of forfeiture should be reversed. One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965).

■ Was there probable cause to believe contraband was stored in, or transported by, the tractor and trailer at the time the search leading to the discovery of the amphetamines was conducted? We hold that probable cause existed reasonably and amply and that the trial court's refusal to suppress was correct.

Firstly:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which

reasonable and prudent men, not legal technicians, act. * * *"

Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

And

"* * *. Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. [Citation omitted.]"

Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

In this case, admittedly, the officers were moved to their warrantless search upon the hearsay information provided by an informer whose identity remained undisclosed. This, depending on circumstances attendant on the case being examined, may or may not meet the constitutional standard. In this case we believe it did.

■ Information from a reliable informant may constitute probable cause. Thus, the information upon which the officer acts and which provides probable cause may be hearsay. State v. McAdams, 83 N.M. 544, 494 P.2d 622 (Ct.App.1972); Draper v. United States, supra. And the informer's identity need not be disclosed. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

■ To support probable cause in issuance of a warrant, and so also to support it here, the information provided by the informant must reasonably indicate the

"* * * underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, * * * was 'credible' or his information 'reliable.' * * *"

Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

■ Credibility and reliability of informants may be shown by testimony of the officer demonstrating the reliability of information furnished by the informer on prior occasions. McCray v. Illinois, supra. In this case the trial court could reasonably conclude that the necessary aegis of credibility or reliability was furnished by the officers' testimony that this informant's information proved reliable in four or five other cases. In one of these a named drug peddler was prosecuted on accurate, detailed and specific information given by this informant. Also, the informant had provided information to other officers regarding other incidents of drugs and this information, also, had proven accurate.

Now, as to the "underlying circumstances" from which informant concluded that the contraband was located in the tractor or the trailer; these were adequately shown to the trial court by Officer Pauley's testimony that the informant had seen a "sale" by Dickerson of "dexedrine pills" from a suitcase at the truck stop and that informant had identified the purchaser.

Information regarding the "sale", detailed information concerning the description of Dickerson, the fact that he would be armed (albeit legally), the fact that a lady would be traveling with him and recitation of the make and color of the tractor and the color of the trailer, considered together with the testimony concerning informant's reliability, furnished adequate basis for the trial court's finding of probable cause.

Now to another feature of the issue: It is contended that a search warrant authorizing search of the tractor and trailer could have and should have been obtained. We do not agree this to be so as a matter of law in this case.

■ The cases which treat of warrantless searches by police establish that, in certain instances, such searches are justified and do not offend constitutional requirements. Thus, where probable cause

exists and exigent circumstances attend the situation, the warrantless search may be undertaken. Exigency of circumstances has been noticed in the case of moving vehicles. This court in State v. Aull, 78 N.M. 607, 435 P.2d 437 (1967), and State v. Lucero, 70 N.M. 268, 372 P.2d 837 (1962), treated such situations and approved the warrantless searches conducted in each case.

In State v. Lucero, supra, this court observed:

> "* * *. This case is within the well-established rule that a warrant is not required for the search of a movable vehicle if the officers have reasonable cause to believe that the automobile contains contraband or stolen goods. * * *"

The quotation from Lucero paraphrases the more detailed and expository pronouncement of the United States Supreme Court in the leading case on the warrantless search of moving vehicles, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In Carroll it was announced:

> "We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the 4th Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

> "Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made.

> * * * [T]hose lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise. * * *

> "* * *. The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported."

And, significantly, it was further stated:

> "* * *. The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law. * * *"

And in 1970 the Supreme Court of the United States, adhering to Carroll v. United States, supra, again stamped approval on a warrantless search of an automobile where probable cause existed, even though the automobile had been seized and was in custody at the police station and even though the search was not incident to an arrest. This is the holding in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), where probable cause combined with "exigent circumstances" provided the required foundation for the warrantless search.

█ It is next contended that the forfeiture of the tractor and trailer constitutes the taking of property without just compensation and, also, that it is an excessive fine. In this, it is asserted, § 54–7–26, supra, the forfeiture statute, offends the state and federal constitutions. The position taken is that because of the disproportionate ratio between the value of the tractor and trailer, on the one hand, and the amount of the fine imposed for the crime of possession of the "dangerous substance,"

on the other hand, some vague and undefined pall of unconstitutionality falls about the forfeiture statute. We cannot, and do not, view the statute in the manner thus suggested.

It appears to this court that the matter of controlling the traffic in "dangerous substance" is for the legislature. Forfeiture of vehicles which transport substances deemed by legislative bodies to be offensive has long been recognized as a proper means of combatting the traffic in such substances. Thus we have in the legal literature the thousands of cases in whose engaging and amusing titles are pitted, in mortal legal warfare, state and national sovereignties against the inanimate machines assembled on the production lines of Detroit; for example: One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania, supra.

And we cannot accept the proposition that because the vehicle which carries the offensive substance is valuable and expensive and the fine for possessing the substance is low, forfeiture of the vehicle is unconstitutional. The penalty must attach equally to the transporter of contraband who transports it in this year's gold-plated Cadillac as to the one who carries it in his 15-year-old pickup. The risk of forfeiture is attendant on the factor of transportation or storage and not on the value of the vehicle used to transport or to keep.

Lastly, it is the position of appellant that reversible error was committed at trial because the reporter did not record the legal arguments of counsel addressed to the trial court in support of the motion to suppress. Apparently appellant's counsel did not request that these be preserved by the reporter. The factual testimony and evidence relevant to the motion to suppress was made a part of the record. The same legal authorities which move appellate courts in this jurisdiction should also move its trial courts. We assume that appellant made the same legal arguments before this court as were made before the trial court. At least this court did not con-

sciously prevent appellant's counsel from doing so. We see no merit in this point.

Rule 15(12) of this court (§ 21-2-1(15)(12), N.M.S.A., 1953 Comp. (Repl. Vol. 4)), requires that:

"On every principal proposition urged, the New Mexico decisions, if any, shall be cited; or counsel shall state an opinion that the question is one of first impression in this jurisdiction."

In connection with the last two points, appellant did not comply with this rule. Nor, for that matter, were any decisions of any other jurisdiction cited in support of the propositions urged. Compliance with the rule is strongly recommended.

The judgment of forfeiture is affirmed.

It is so ordered.

McMANUS, C. J., and OMAN, J., concur.