543 P.2d 831

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Leandro BLEA, Defendant-Appellant.**

**No. 1984.**

Court of Appeals of New Mexico.

Oct. 28, 1975.

Rehearing Denied Nov. 10, 1975.

Certiorari Denied Dec. 11, 1975.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, Appellate Defender, Reginald J. Storment, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Mark Shoesmith, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Defendant appeals from his conviction of possession of heroin. The issues raised on appeal are the trial court's asserted errors in denying (a) Motion to Suppress the Evidence for lack of probable cause, and (b) Motion for Continuance to make use of newly discovered evidence favorable to the defense. We affirm.

### Motion to Suppress

Bernalillo County Sheriff's narcotic officers Lundy and Sanchez were patrolling in a part of Albuquerque that is known as a "very high narcotic area." Lundy had been acquainted with defendant for two or three years and knew him to be a narcotic user. Defendant had just come from a group of people that Lundy knew to be pushing in the area. While walking away from the group defendant was observed holding his right hand as if he were holding something. Lundy told Sanchez, ". . . '[t]here goes a guy that is holding', . . . ."

The officer went into considerable detail as to what is meant by the term "holding" and the significance of the term.

"A Well, to me, like I said, I just knew that he was carrying some heroin, I mean, I couldn't see it or anything, but, I felt that that was what it was, and this is from being down there almost every day, this is the way that they do when an addict goes somewhere and scores, 99 times out of a hundred, they will generally carry it in their hand that way, because we had been down there everyday, and they were really watching for us, you know.

"Q And why would they carry it in their hand as opposed as to putting it in their pant pocket?

"A Well, if they got it in their pocket, I have had a lot of addicts tell me that they carry it in their hand because if a narc drives up, it takes them too long to get it out of their pocket, and you can grab them and, if they carry it in their hand, they can throw it on the ground or away or generally they can swallow it, and you can't recover the evidence.

"Q In your experience, have you encountered situations where you see a narcotic user carrying something in his hand in a high narcotic area?

"A We were down there almost everyday, you see it everyday, it is a daily routine thing down there, for months.

"Q In those situations where you see that, how often did it happen when you stopped somebody that was doing something like that, and that he had something other than heroin in his hand?

"A I don't recall as ever stopping somebody like that that had something beside heroin. You can generally tell by the way they look at you, the way that they act when they see you, their reactions to seeing a narc, and, you know whether or not they've got heroin or something else."

The officers then drove around the block and saw defendant standing by the back of his pickup. They saw defendant reach into the back of the pickup and remove "a Lota' Burger cup." He then held his right hand over the cup as if he was putting something into the cup. Defendant then

". . . smashed the cup on the sides and he rolled it up and he took his right hand and he placed it in the left front corner of the bed and then he got into his vehicle."

The officer then described how narcotics are hidden.

"Q When a narcotic addict has got some heroin on him and he for some reason suspects that somebody is on to him, is there some common place that they try to hide it, some common place that they would try to?

"A They either run or they swallow it if they are carrying and they see a narcotic agent start to approach them.

"Q If they had time to try to hide it, what would be the most common place?

"A Well, there's a lot of pushing that goes on in the street corners there, standing out in the streets, and they generally will get a can or a cup, or a cigarette package, anything, and they put the heroin in there and they hide it a little ways off from them because in that area there is a lot of cans, paper, everything laying around, and they will lay it down somewhere away from them so that if you approach them you can't find it. Even if you would find it, you couldn't prove whose it was, and that is generally the way that they do it down there."

The officers coasted up behind the defendant's pickup as he was about to drive away. They got out of their car and approached the pickup. Officer Sanchez informed defendant they were police officers. Officer Lundy reached into the back of the pickup, took out and unfolded the paper cup, and found the heroin wrapped in a "brown piece of paper." The truck bed was clean except for that one cup.

■ Probable cause exists when the facts and circumstances within the officers knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed. *Brinegar v. United States,* 338 U.S. 160, 68 S.Ct. 1302, 93 L.Ed. 1879 (1949); *State v. Riggsbee,* 85 N.M. 668, 515 P.2d 964 (1973); See *State v. Hilliard,* 81 N.M. 407, 467 P.2d 733 (Ct.App.1970). The question is whether the facts before the trial court were sufficient for that court to determine that probable cause existed for defendant's arrest. *State v. Deltenre,* 77 N.M. 497, 424 P.2d 782 (1966).

■ In addition to the foregoing evidence Officer Lundy testified he had been working in narcotics for approximately four years; that he had made numerous arrests in the area; that for the year prior to defendant's arrest he had spent almost every day in the area; that he was acquainted with many addicts and had discussed methods of carrying and hiding small quantities of narcotics. Based on all of the foregoing facts we hold the officers had reasonable grounds for belief in defendant's guilt and therefore had probable cause for the detention, and search and seizure which disclosed the heroin.

Having found that the officers had probable cause we need not discuss defendant's issue of "Stop and Frisk." With regard to the Motion for Continuance made at the trial, the record reflects that defendant filed his Motion for Disclosure one week prior to trial. After granting the motion three days before trial the district attorney disclosed the name of a polygraph examiner who had been investigating accusations by an informant against one of the witness officers. Defendant contends he was only able to speak with the polygrapher the morning of the trial and asked for the continuance in order to more properly prepare the defense to impeach the credibility of the officer.

■ The granting of a continuance is within the discretion of the court. Absent a showing of abuse of discretion the trial court's decision will stand. *State v. Belcher,* 83 N.M. 75, 488 P.2d 125 (Ct.App. 1971).

The defendant offered no explanation why he was unable earlier to be in touch with the polygrapher whose name was disclosed by the district attorney. The polygrapher testified as part of defendant's tender that his testing of the informant was inconclusive. The court granted defendant an opportunity to produce a further witness to complete his tender, but that witness was not brought in. Under these circumstances the court did not abuse its discretion in denying the Motion for a Continuance.

Oral argument is deemed unnecessary. The conviction is affirmed.

It is so ordered.

WOOD, C. J., and SUTIN, J., concur.