577 P.2d 1257

STATE of New Mexico,
Plaintiff-Appellant,

v.

Scott KAISER, Defendant-Appellee.

No. 3148.

Court of Appeals of New Mexico.

Feb. 28, 1978.

Writ of Certiorari Denied March 28, 1978.

Toney Anaya, Atty. Gen., Sammy J. Quintant, Michael E. Sanchez, Asst. Attys. Gen., Santa Fe, for plaintiff-appellant.

Ronald T. Taylor, Albuquerque, for defendant-appellee.

OPINION

LOPEZ, Judge.

The defendant was indicted in Bernalillo County, New Mexico on May 25, 1977, for the following crimes: (1) possession of peyote with intent to distribute, contrary to § 54–11–22(A)(2)(a), N.M.S.A.1953 (Repl.

Vol. 8, pt. 2, Supp.1975); (2) possession of LSD with intent to distribute contrary to § 54–11–22(A)(2)(a), supra; (3) possession of marijuana contrary to § 54–11–23(A) & (B)(2), N.M.S.A.1953 (Repl.Vol. 8, pt. 2, Supp.1975); (4) possession of hashish contrary to § 54–11–23(A) & (B)(4), N.M.S.A. 1953 (Repl.Vol. 8, pt. 2, Supp.1975); (5) possession of cocaine contrary to § 54–11–23(A) & (B)(5), N.M.S.A.1953 (Repl.Vol. 8, pt. 2, Supp.1975); and (6) conspiracy in violation of § 40A–28–2, N.M.S.A.1953 (2nd Repl.Vol. 6, 1972). The defendant pled not guilty to each count. Thereafter, defendant moved to suppress all evidence confiscated from defendant's roomette in a railroad pullman car and all statements made by the defendant. The trial court granted the motion to suppress the evidence. The State filed an appeal pursuant to § 21–10–2.1(B)(2), N.M. S.A.1953 (Repl.Vol. 4, Supp.1975). We affirm.

The appeal presents two issues: (1) whether defendant's arrest was valid; and (2) whether the search and seizure of defendant's luggage in his train compartment was in violation of the Fourth Amendment to the United States Constitution.

*Facts*

On February 9, 1977, an Amtrak agent notified the Albuquerque Police Department that two passengers who had boarded an Amtrak train at Flagstaff, Arizona were suspected of transporting contraband. The agent had been informed of the passengers' suspect activities by another Amtrak agent who had received this information from the railroad attendant who had assisted the passengers in loading their luggage in Flagstaff, Arizona. The attendant's suspicions were aroused when he noticed that the passengers, the defendant and a companion, fit an informal profile of narcotic traffickers; young, clean-cut men of college age; paying cash for a one-way ticket to Pittsburgh, Pennsylvania; having several pieces of heavy luggage; and insisting that the luggage be put in their compartment rather than in the baggage car. Upon receiving the agent's information, the Albuquerque

Police Department arranged for further investigation by the narcotics squad who then awaited the arrival of the train in Albuquerque. Three dogs, trained in marijuana detection, and their handlers, were included in the group. The train arrived in Albuquerque two hours later than scheduled. At that time two of the dogs entered the defendant's car and independent of each other indicated or "keyed" on marijuana in defendant's compartment. As a third dog was boarding the train to confirm the indication of the first two dogs, the defendant, Kaiser, exited from the compartment. The defendant was then arrested and advised of his rights. After the defendant had disembarked from the train in the custody of a police officer, one of the dogs entered the compartment and indicated the presence of marijuana in a suitcase and in a pipe which had been left on the seat. The police officers then conducted a search of all the baggage. They discovered approximately 1,200 pounds of peyote and various other controlled substances including marijuana, hashish, LSD and cocaine. The officer who escorted the defendant learned of the discovery of peyote en route to the police station and initiated the conversation in which defendant made incriminating statements. The police did not attempt to remove the baggage before searching it; they did not attempt to secure a warrant; nor did they ask for defendant's consent to search. At the hearing on the motion to suppress, the State's witnesses testified that there was no concern about the dangerousness of the defendant, nor was there any concern about the presence of any weapons or explosives. Further, the defendant was not even present in the compartment at the time of the search.

*Point I*

*The arrest of the defendant was lawful.*

The legality of a warrantless arrest depends upon whether the arrest was based upon probable cause. If probable cause to arrest the defendant exists, the need for police officers to get an arrest warrant is obviated. In *State v. Deltenre,* 77 N.M. 497, 424 P.2d 782 (1966), cert. de-

nied, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967), the New Mexico Supreme Court, quoting from *Brinegar v. U. S.*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) set out the definition of probable cause:

"  *  *  *  Probable cause exists where 'the facts and circumstances within their [the officers] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." [citation omitted.]

■ Although neither the keying of the dogs, nor the railroad attendant's suspicions alone would be sufficient to establish probable cause, the combination of the attendant's suspicions and the confirmation of these suspicions by the reactions of the two police dogs specifically trained to detect the presence of marijuana did establish sufficient probable cause to believe that marijuana was being transported. *People v. Campbell*, 35 Ill.App.3d 196, 340 N.E.2d 690 (1975); *Hernandez v. United States*, 353 F.2d 624 (9th Cir. 1965), cert. denied, 384 U.S. 1008, 86 S.Ct. 1972, 16 L.Ed.2d 1021 (1966).

The indication of a police dog trained to detect marijuana has been held to establish the necessary probable cause to arrest. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *United States v. Race*, 529 F.2d 12 (1st Cir. 1976); *United States v. Bronstein*, 521 F.2d 459 (2d Cir. 1975), cert. denied, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976); *United States v. Fulero*, 162 U.S.App.D.C. 207, 498 F.2d 749 (1974); *United States v. Johnston*, 497 F.2d 397 (9th Cir. 1974); *People v. Campbell*, supra. Thus, there is no question that the legality of the defendant's arrest was in conformity with well-established law.

Point II ·

*The search and seizure of defendant's luggage in his train compartment is in violation of the Fourth Amendment to the United States Constitution.*

Although the arrest of the defendant was lawful, the police had no legal authority to search the luggage in defendant's compartment. A warrantless search is per se unreasonable, subject to a very few, carefully delineated and limited exceptions. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Ledbetter*, 88 N.M. 344, 540 P.2d 824 (Ct.App.1975); *State v. Gorsuch*, 87 N.M. 135, 529 P.2d 1256 (Ct.App.1974).

The State argues that the trial court erred in granting the defendant's motion to suppress because the warrantless search was justified. The State relied on the following exceptions: (a) probable cause plus exigent circumstances; or (b) search incident to a lawful arrest.

We must determine in this instance whether or not either of these exceptions is applicable. The first exception asserted by the State is that there was probable cause plus exigent circumstances. Taking into account the agent's suspicions, the informal profile and the indication by the dogs, there was probable cause. The question presented here, however, is whether this situation presented the necessary exigent circumstances which made it unnecessary to get a warrant.

"Exigent circumstances" are summarized in *U. S. v. Rubin*, 474 F.2d 262 (3d Cir. 1974), cert. denied, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973) as follows:

"  .  .  .  (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that 'efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged  .  .  .  .' " [citations omitted]

None of these exigent circumstances exist in the present case. Although the train had

been running late, the police had complete custody of the defendant and his luggage. When the police searched the luggage the defendant was not even present. Further, there was no danger of any weapons, explosives or destructible evidence which is the rationale for the reasonableness of a warrantless search under the probable cause plus exigent circumstances exception. Compare *State v. Sanchez,* 88 N.M. 402, 540 P.2d 1291 (1975). The State seems to argue that the exigent circumstances were created by the fact that the train was running two hours late and the police did not desire to delay the train any longer. The search took about 20 minutes. The police would have saved time if they had just removed the luggage, taken it to the police station, and then secured a search warrant. *United States v. Chadwick,* supra, clearly supports this idea.

◼ The question presented in *Chadwick* was whether federal agents are required to have a search warrant before opening a lawfully seized footlocker at the time of the arrest of its owners where there is probable cause to believe it contains contraband Although there are superficial differences in the facts in *Chadwick,* the holding is clearly applicable. The Court held that under the circumstances a warrant was required. We conclude that the facts of the case at bar do not justify the application of the "probable cause plus exigent circumstances" in this case. *United States v. Chadwick,* supra; *State v. Ledbetter,* supra; *State v. Gorsuch,* supra.

The second exception by which the State seeks to justify the failure to secure a search warrant is that the search was incident to a lawful arrest. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) sets out the permissible scope of a search incident to a lawful arrest:

"There is ample justification . . . for a search of the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

It is difficult to conceive of how defendant's luggage could have been "within his immediate control", such that he could have destroyed evidence or have seized a weapon, since he had already been placed in custody and removed from the train. As the Court in *Chadwick* stated:

"Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence the search of that property is no longer an incident of the arrest."

The Fourth Amendment protects people from unreasonable governmental intrusion into their legitimate expectations of privacy. *Katz v. United States,* supra; *United States v. Chadwick,* supra. As the court in *Chimel* noted:

"And we can see no reason why, simply because some interference with an individual's privacy and freedom of movement has lawfully taken place, further intrusions should automatically be allowed despite the absence of a warrant that the Fourth Amendment would otherwise require." *Chimel,* note 12, 395 U.S. at 766, 89 S.Ct. at 2042, 23 L.Ed.2d at 696.

◼ We see no distinction between luggage in a private compartment and luggage in a home belonging to the defendant. If the luggage had been in the home of the defendant, certainly the police department would not have hesitated to get a search warrant. *Chadwick* confirms the expectation of privacy inherent in locked luggage. This expectation of privacy is the same in the instant case. The purpose for permitting a warrantless search incident to a valid arrest is not present. *State v. Vigil,* 86 N.M. 388, 524 P.2d 1004 (Ct.App.1974), cert. denied, 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975).

◼ The State further argues that *Chadwick* is not applicable to the case at bar. The State contends that the United States Supreme Court decided the *Chadwick* case

subsequent to the search of defendant's luggage. The defendant does not dispute the fact that the case was decided subsequent to the search. The issue of retroactivity is only raised, however, when a court's decision overturns a prior case or makes new law where the enforcement officials have relied on prior law. *Stevens v. Wilson,* 534 F.2d 867 (10th Cir. 1976); *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975). *Chadwick* merely applies the existing search and seizure law to the facts in the instant case. The State's contention regarding retroactivity is without merit.

██ The search and seizure of the defendant's luggage without a warrant was unlawful and therefore, any incriminating statements made by the defendant relative to the contents in the luggage were inadmissible. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The trial court correctly granted defendant's motion to suppress the evidence gained from the unlawful search of the defendant's luggage and the incriminating statements stemming therefrom as contrary to the Fourth Amendment of the United States Constitution.

The order of suppression entered by the trial court is affirmed.

IT IS SO ORDERED.

HERNANDEZ, J., specially concurring.

WOOD, C. J., concurring in part and dissenting in part.

HERNANDEZ, Judge (specially concurring).

I concur in Judge Lopez's opinion, with one exception: I agree with Judge Wood that the signaling of the dogs alone would have been sufficient to establish probable cause for arrest. See the cases cited in Judge Wood's opinion. I do not find that *United States v. Chadwick,* cited by Judge Lopez, deals with the question of whether the signaling of a dog trained to detect marijuana establishes probable cause for arrest. See 433 U.S. 1, 97 S.Ct. 2476, 2480, note 1, 53 L.Ed.2d 538.

WOOD, Chief Judge (concurring in part and dissenting in part).

The majority hold that defendant's arrest was valid; I agree, but not for the reason stated by the majority. The majority do not expressly hold that seizure of defendant's luggage was valid; however, their discussion implies the seizure was valid. I agree. The majority hold the search of the seized luggage was invalid. I disagree.

A summary of my differences with the majority follows.

1. The majority state that the "keying" of the dogs *alone* would not establish probable cause to arrest defendant. I disagree. The accuracy of the detection of marijuana by the dogs is not contested. The detection of the marijuana by the dogs, in itself, provided probable cause for defendant's arrest.

2. The majority utilize a definition of exigent circumstances stated in *United States v. Rubin,* 474 F.2d 262 (3rd Cir. 1973). This definition should not be utilized because it is unnecessarily restrictive and is contrary to New Mexico law. What amounts to exigent circumstances is a variable which depends on the practical consideration in each case.

3. The majority state there are only superficial differences between this case and *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). I disagree, there is a significant factual difference. The luggage in *Chadwick* was opened one and one-half hours after being removed from the place of seizure; the luggage in this case was opened at the scene, contemporaneously with its seizure.

4. Relying on *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the majority indicate the luggage was not within defendant's immediate control when opened. Their reasoning is that "immediate control" is limited to areas within which defendant could destroy evidence or seize a weapon. This reasoning disregards the explanation of *Chimel* in

*United States v. Chadwick*, supra. A contemporaneous search, incident to arrest, may be made "whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence."

My reasoning follows.

Controlled substances, including peyote, were found in defendant's luggage in a roomette in a railroad car. After being arrested, defendant made a statement concerning the peyote. Independent consideration of the statement is not required. If the luggage search was legal, the statement should not have been suppressed. If the luggage search was illegal, the trial court could properly suppress the statement as a product of an illegal luggage search. See *State v. Everitt*, 80 N.M. 41, 450 P.2d 927 (Ct.App.1969).

### Probable Cause for Arrest

Two men boarded the train, eastbound, at Flagstaff, Arizona. They had tickets for Pittsburgh (Pennsylvania?) with a change at Chicago. Their appearance, luggage and activities met an informal profile of people transporting drugs. Railroad personnel in Flagstaff relayed this information to railroad personnel in Albuquerque. The information was passed to the Albuquerque police. Discussion of the details of the profile and discussion of the testimony as to the accuracy of the profile are unnecessary because the arrest of defendant and his travelling companion was not based on the profile. This profile, however, was sufficient for police officers to investigate the situation. See *State v. Galvan*, 90 N.M. 129, 560 P.2d 550 (Ct.App.1977).

When the train arrived in Albuquerque, two hours late, law enforcement officers boarded the car in which defendant and his companion had a roomette. Their luggage (somewhere between 12 to 16 pieces—the testimony is not precise) was inside the roomette. An officer, handling a dog trained to detect marijuana, checked the car. The dog "keyed" on the door to the roomette. The officer and dog left the car; a second officer and a second dog trained to detect marijuana entered. The dog of this second team also keyed on the door to the roomette. At this point defendant and his companion came out of the roomette and were arrested.

Defendant claims "the initial search by the police using the sniffing dogs at the Appellee's compartment door was an unlawful search in violation of his Fourth Amendment rights. Since this unconstitutional search formed the basis for the subsequent arrest of the Appellee, the Appellee's subsequent arrest was therefore unconstitutional." I disagree.

The evidence is that the dogs were trained to detect the odor of marijuana. They detected such an odor emanating from the roomette. This detection was by sniffing the air outside the door to the roomette. *United States v. Fulero*, 162 U.S.App.D.C. 206, 498 F.2d 748 (1974) stated a claim of "unconstitutional intrusion" in such circumstances was frivolous. *United States v. Bronstein*, 521 F.2d 459 (2d Cir. 1975) states:

> If the police officers here had detected the aroma of the drug through their own olfactory senses, there could be no serious contention that their sniffing in the area of the bags would be tantamount to an unlawful search. [Case citations omitted.] We fail to understand how the detection of the odoriferous drug by the use of the sensitive and schooled canine senses here employed alters the situation and renders the police procedure constitutionally suspect.

See also *People v. Campbell*, 35 Ill.App.3d 196, 340 N.E.2d 690 (1975).

Defendant ignores the above dog-sniffing decisions. He relies on *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *Katz* held that electronic surveillance of defendant's telephone conversation from a public pay phone, without a search warrant or judicial authorization, was illegal. "The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus

constituted a 'search and seizure' within the meaning of the Fourth Amendment." *Katz* is inapplicable; defendant could have no reasonable expectation of privacy in the smell escaping from the roomette.

"Generally evidence acquired by unaided human senses from without a protected area is not considered an illegal invasion of privacy, but is usable under doctrines of plain view or open view or the equivalent. Odors so detected may furnish evidence of probable cause of 'most persuasive character,' . . . 'physical fact[s] indicative of possible crime,' . . . ." *United States v. Solis*, 536 F.2d 880 (9th Cir. 1976). Sniffing by humans in the corridor of the railroad car outside the roomette door would not have been an illegal invasion of defendant's privacy. Sniffing by dogs in the same place was also not an illegal invasion of defendant's privacy.

The accuracy of the dogs' detection of marijuana is not challenged. The fact that the dogs were accurate in their detection and the fact that the dogs detected marijuana inside the roomette provided probable cause to arrest defendant for a marijuana violation. *United States v. Solis*, supra. For a definition of probable cause to arrest, see *State v. Deltenre*, 77 N.M. 497, 424 P.2d 782 (1966), cert. denied, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967); *State v. Blea*, 88 N.M. 538, 543 P.2d 831 (Ct.App. 1975).

*Exigent Circumstances*

After defendant and his companion were arrested, officers, and the second dog, immediately entered the roomette. The officers had no search warrant nor did they have defendant's consent. The dog "keyed" on two items, thus indicating the presence of marijuana in these items. One item was a tobacco pipe lying on a seat; this pipe is not involved in the appeal. The second item was described as a brown suitcase. Officers opened the suitcase and found marijuana. The other luggage was then opened and a variety of controlled substances were found, including several hundred pounds of peyote. The luggage was then removed from the roomette and from the train. The time involved in this search was between 20 and 30 minutes.

The evidence is not clear as to whether all the baggage was locked. The items that were locked were opened with keys obtained from the defendant. I attribute no significance to the uncertainty of this evidence. The only inference from the evidence is that each item of luggage was closed. The luggage was in a roomette occupied by defendant. The conclusion from these facts is that defendant had a reasonable expectation of privacy as to the contents of the luggage. See *United States v. Chadwick*, supra.

Defendant argues that (1) the officers improperly entered the roomette, (2) once inside had no basis for opening any of the luggage, and (3) at most, could seize only the one suitcase in which the dog indicated the presence of marijuana. Arguments 1 and 3 were not raised in the trial court and are not before us for review. N.M.Crim. App. 308. In addition, arguments 1 and 3 are without merit because of exigent circumstances.

A warrantless search may be justified by exigent circumstances. This rule has been recognized in New Mexico in both automobile and non-automobile searches. *In re One 1967 Peterbilt Tractor, Etc.*, 84 N.M. 652, 506 P.2d 1199 (1973); *State v. Hansen*, 87 N.M. 16, 528 P.2d 660 (Ct.App.1974). *United States v. Chadwick*, supra, indicates exigent circumstances may exist in connection with the search of luggage.

I do not attempt a comprehensive definition of exigent circumstances. The circumstances will vary from case to case "and the inherent necessities of the situation at the time must be scrutinized." *United States v. Rubin*, supra. The existence of exigent circumstances "depends on practical considerations"; the circumstances are to be evaluated "from the point of view of a prudent, cautious and trained police officer." *State v. Sanchez*, 88 N.M. 402, 540 P.2d 1291 (1975).

The circumstances in this case are that the dog had detected marijuana inside the roomette located on a railroad car of an interstate train. The train was two hours late in arriving in Albuquerque. According to a police officer, the railroad officials "gave us so much time and that was it." The police were faced with the possibility of the marijuana being removed from the state. *United States v. Ogden*, 485 F.2d 536 (9th Cir. 1973). The police were also faced with the possibility that if the marijuana remained on the train it could be disposed of by a confederate. *United States v. Johnston*, 497 F.2d 397 (9th Cir. 1974).

At the time the police officers were faced with these possibilities they knew only that the marijuana was somewhere in the roomette. In these circumstances the officers properly entered the roomette to locate the source of the marijuana odor.

Upon entry into the roomette the dog indicated the brown suitcase contained marijuana. A fact known to the officers was that the dog had always been correct when it indicated the presence of marijuana but had sometimes failed to detect the presence of marijuana. Once marijuana was indicated in one suitcase it was reasonable for the officers to seize that suitcase. With marijuana indicated in one item of luggage, the officers could reasonably seize the other items of luggage as potential hiding places for additional marijuana.

Defendant's argument 2 is the crux of the appeal—could the officers open the luggage they rightfully seized? Defendant's view is that once the luggage was seized the police had no right to open and search the luggage without a warrant. Were there exigent circumstances which justify opening and searching the luggage?

This question, involving the right to open and search the luggage, was the question litigated in the trial court. There is evidence that the police were looking for marijuana when they opened the luggage; they were not concerned with the possibility that the luggage contained guns or explosives. See *United States v. Chadwick*, supra, note 9. There is evidence that when the luggage was opened and searched, the roomette, where the search occurred, was in the exclusive control of the police. A conflicting inference is that the police needed to know that the marijuana was in their control before departing from the train, that this could only be done by viewing the marijuana, and this required opening the luggage.

The existence of exigent circumstances in opening and searching the luggage was a question of fact to be decided by the trial court. *State v. Sanchez*, supra. Although the trial court made no specific ruling on exigent circumstances, its order suppressing the contraband was an implied ruling that exigent circumstances did not exist. Our function, on review, is to determine whether substantial evidence supports this ruling. *State v. Sanchez*, supra. The evidence that the marijuana was in the luggage and the luggage was within the exclusive control of the police was substantial evidence which supports the ruling that exigent circumstances did not exist. This, however, does not dispose of the appeal; there is still the question of whether the search of the luggage was proper as an incident to defendant's arrest.

### Search Incident to Arrest

Both in the trial court, and here, the parties have disputed the applicability of *United States v. Chadwick*, supra, to this case.

The State has contended throughout that to apply *Chadwick* we must give retroactive effect to that decision because *Chadwick* was decided after the search in this case. The State argues that *Chadwick* states new law, that at this time the United States Supreme Court has not applied *Chadwick* retroactively and that this Court should not do so. No question of retroactive application of *Chadwick* is involved because that decision did not state new law. The *Chadwick* decision applied prior decisions of the United States Supreme Court to the facts of that case; two decisions particularly applicable were *Chimel v. California*, supra, and *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

Defendant has contended throughout that under *United States v. Chadwick*, supra, the search of the luggage could not be justified as an incident of defendant's arrest. In *Chadwick* a footlocker containing marijuana was shipped by train. After the footlocker was claimed at the end of the train journey and while the footlocker was still in the train station, a dog signaled the presence of marijuana in the footlocker. The footlocker was seized by officers when it was being loaded into a car outside the station. The footlocker was then taken to the federal building and opened one and one-half hours later.

*Chadwick* held this warrantless search to be illegal, stating:

[W]arrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest," *Preston v. United States* [supra] . . . or no exigency exists.

*Chadwick* would be applicable if the officers had taken defendant's luggage to the police station and there opened the luggage without a warrant. That is not the fact situation in this case. The search of the defendant's luggage was neither remote in time nor place, the search occurred immediately after defendant's arrest and in the roomette outside of which defendant was arrested.

Although the time and place of the search in *United States v. Chadwick*, supra, differs from this case, defendant nevertheless contends that the following language from *Chadwick* is controlling:

Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

This language must be considered in relation to the factual context in which it was used. That factual context involved a de-

lay between the arrest and the search; it did not involve a search contemporaneous with the arrest. This distinction is pointed out in the dissenting opinion in *United States v. Chadwick*, supra. "The agents probably could have avoided having the footlocker search held unconstitutional . . . by conducting the search on the spot rather than back at their office."

My conclusion is that *United States v. Chadwick*, supra, does not control this case because of the difference in the facts. *Chadwick*, however, is helpful because of its discussion of *Chimel v. California*, supra.

*Chimel v. California*, supra, involved an arrest and a contemporaneous search of the arrestee's house. I agree with defendant that *Chimel* is applicable because here the search was contemporaneous with defendant's arrest. See the discussion in *State v. Reyes*, 81 N.M. 404, 467 P.2d 730 (1970); see also *Matter of Doe*, 89 N.M. 83, 547 P.2d 566 (Ct.App.1976).

The issue in *Chimel v. California*, supra, was the extent of the warrantless search permitted as an incident to the arrest. *Chimel* limited the search to the area within the arrestee's immediate control and indicated the search must be confined to the area in which the arrestee might gain possession of a weapon or destructible evidence. *Chimel* stated there was no justification for searching "any room other than that in which an arrest occurs" or for searching through "closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant." *Chimel* was applied in *State v. Rhodes*, 80 N.M. 729, 460 P.2d 259 (Ct.App.1969).

*United States v. Chadwick*, supra, explains *Chimel v. California*, supra, as follows:

The reasons justifying search in a custodial arrest are quite different. When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To

safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless "search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S., at 763, 89 S.Ct. 2034, 23 L.Ed.2d 685. See also *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, 44 Ohio Ops.2d 383 (1968).

Such searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. The potential dangers lurking in all custodial arrests make warrantless searches of items within the "immediate control" area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, 66 Ohio Ops.2d 202 (1973); *Terry v. Ohio*, supra.

This language answers defendant's contention that the officers could not search the luggage because the officers had no reason to believe that it contained weapons or destructible evidence.

I do not understand defendant to claim that the luggage within the roomette was not in the *area* of defendant's immediate control. Defendant had controlled the roomette and the luggage from the time he boarded the train in Flagstaff. The fortuity of being arrested on the outside rather than the inside of the door to the roomette did not remove the roomette from the *area* of his immediate control.

I do understand defendant to claim that he did not *control* that area at the time of the search because he had been placed under arrest and removed from the railroad car. This claim is similar to the contention rejected in *United States v. Eatherton*, 519 F.2d 603 (1st Cir. 1975), cert. denied, 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975).

In *Eatherton*, defendant had been arrested, handcuffed with his hands behind his back and placed in a police car before the police opened his briefcase. The defendant in *Eatherton* argued there was no urgency to inspect the interior of the briefcase once the briefcase had been removed from his possession and beyond his possible reach. See also *United States v. Mehciz*, 437 F.2d 145 (9th Cir. 1971), cert. denied, 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139 (1971). Our answer is that "immediate control" refers to control at the time of arrest.

Defendant also relies on the statement in *Chimel v. California*, supra, that a warrantless search, incident to arrest, may not include closed areas of the room where the arrest occurs. See also *United States v. Chadwick*, supra, note 10. The dissenting opinion to *United States v. Chadwick*, note 5, suggests that *Chimel* does not apply to on-the-spot search of luggage which is within the area of immediate control of the defendant. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) approved the search of the zipper bag carried by defendant at the time of his arrest. I do not understand *Chimel* to have overruled *Draper*. *United States v. Eatherton*, supra, approved the search of the briefcase carried by defendant at the time of his arrest. *United States v. Mehciz*, supra, approved the search of an overnight suitcase carried by defendant at the time of his arrest.

Is it vital that defendant be carrying the luggage? No. In *United States v. French*, 545 F.2d 1021 (5th Cir. 1977), the suitcase was within "arm's length" of the arrestee. In *United States v. Frick*, 490 F.2d 666 (5th Cir. 1973) the attache case was within two feet of defendant.

*Draper v. United States*, supra, *United States v. Eatherton*, supra, *United States v. Mehciz*, supra, *United States v. French*, supra, and *United States v. Frick*, supra, are to the effect that luggage may be seized, opened and searched as an incident to arrest. In so holding, the courts in *Mehciz*, *French* and *Frick* were of the view that they were *applying Chimel v. California,*

supra. What was applied? *Chimel's* condemnation of general exploratory searches, *French*, supra; and *Chimel's* limitation of the search to the area within the immediate control of defendant, *Mehciz* and *Frick*, supra.

Where the police have probable cause to believe the luggage contains evidence of a crime, *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), there may be a warrantless search of the luggage contemporaneously with defendant's arrest, *Draper v. United States*, supra, if the luggage is within the area of defendant's immediate control, *Chimel v. California*, supra, *United States v. Chadwick*, supra.[1] These requirements were met in this case.

The trial court erred in suppressing the contraband obtained from defendant's luggage and in suppressing defendant's statement on the basis that it was the "fruit" of an illegal search. The order granting the motion to suppress should be reversed.

1. *Chimel v. California*, supra, limits incident to arrest searches to the area of the arrestee's immediate control. *United States v. Chadwick*, supra, refers to luggage or other personal property not immediately associated with the person of the arrestee. An argument can be made that luggage could be within the area of an arrestee's immediate control but not be immediately associated with the arrestee's person. I do not understand *Chimel* or *Chadwick* to require such a distinction, particularly in the case of a search contemporaneous with the arrest. Such a distinction is incapable of being applied by officers attempting to conduct searches in accordance with the law. See *United States v. Eatherton*, supra. Such a distinction should not be applied until required by decision of the United States Supreme Court.