528 P.2d 660

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Curtis HANSEN, a/k/a Herb Wade, Defendant-Appellant.**

**No. 1503.**

Court of Appeals of New Mexico.

Nov. 6, 1974.

David L. Norvell, Atty. Gen., W. Royer, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Robert H. Scott, Wollen, Segal & Scott, Albuquerque, for defendant-appellant.

## OPINION

HENDLEY, Judge.

Convicted of armed robbery contrary to § 40A–16–2, N.M.S.A.1953 (2d Repl.Vol. 6, 1972, Supp.1973), defendant Hansen a/k/a Wade appeals asserting two grounds for reversal, namely, failure of the trial court to grant defendant's motion to suppress evidence acquired from a search and seizure and regarding a line-up identification.

*Search and Seizure*

Everitt Jewelry was robbed by two armed and unmasked Negro men. They had been in the store previously while the saleslady, Ms. Redak, was waiting on a customer. They left the store and returned when the customer departed. When they returned they "put a gun on" Ms. Redak and tied her up. They were in the store not "over ten minutes." They filled "a sack full of ring boxes with rings in them" and left. Ms. Redak managed to make a phone call and give a description; at approximately the same time a police officer arrived and took a description which he subsequently broadcast.

Shortly thereafter, police officer Garcia saw an individual matching the description of the first offender running across the street in front of his police car and "* * * stuffing something underneath his pants * * *" before disappearing on the southside of the house. Garcia received a verification of the description and gave pursuit. "* * * I drove immediately behind the house * * * and I ob-

served this same individual (Wade) go into this house, 1409 Arno, through the back door." Garcia then proceeded south down an alley adjacent to the house in hopes of seeing the second offender and when he did not, he returned to the back of the house. Three other officers then met Garcia. They "* * * banged on the door, which was locked, and * * * announced themselves. * * *" They did not get an answer. The officer testified that the wife of the owner of the house came out the door, closing it behind her, and stated that there were two men in the house. After some discussion with the officer, she departed for reasons which are disputed but unimportant. She did not return. The officers heard noises of people moving, doors slamming and saw someone looking out a window.

About ten minutes later and without any warrant, one of the officers opened a back window which was broken. Using a broomstick, he closed two adjoining doors in order to protect the others from the men in the house who were believed to be armed. The officer them climbed in and opened the back door and let the other officers in. Defendant Wade was found in bed with only black shorts on. Officer Garcia stated that Wade was the same person he saw run inside the house. In the process of checking for the second suspect an officer found Williams in a closet under a pile of clothes wearing only a pair of pants matching the broadcast description.

In the closet the officers saw another pair of pants and a shirt which also matched the broadcast description. On the floor of the closet next to where Williams was sitting the officers saw two small ring boxes with an Everitt Jewelry label and a sack with jewelry boxes with rings inside, also identified by label as having come from Everitt Jewelry. Both defendants were immediately placed under arrest.

Defendant's claim centers on two questions: (a) did the police officers have a right to enter the house without a search warrant; and, (b) was there a valid search and seizure after defendant Wade was ar-

rested, handcuffed and advised of his rights.

■ Defendant frames the issue as being whether " * * * the officers had the legal right to enter the house over the protests of the owner and without a valid search warrant. * * * " Defendant assumes that the trial court accepted the lady of the house's version rather than the officer's version. We need not decide what version the trial court accepted. We feel this case is controlled by Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) when the court stated:

> " * * * that neither the entry without warrant to search for the robber, nor the search for him without warrant was invalid. Under the circumstances of this case, *the exigencies of the situation made that course imperative.*' [citations omitted] The police were informed that an armed robbery had taken place * * *. They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them· or to effect an escape." [Emphasis Added]

Defendant argues that the time delay between the time the officer saw Wade go into the house and the time the officers actually entered the house was of a sufficient duration that " * * * it would seem that there was ample time to obtain a valid search warrant, and that the doctrine of 'hot pursuit' should not apply." We disagree. Under the facts set forth it would have been unwise to have delayed until a search warrant was secured. Additional delay would have allowed time for disposing of the clothing and contraband. Under the circumstances of this case the entry by the officers was a valid intrusion.

■ Defendant next states that the search and subsequent seizure of the contraband " * * * revolves around the fact that defendant Wade was arrested almost immediately by the police after they entered the structure." Defendant states that after both he and Williams were arrested, handcuffed and verbally advised of their rights there was a subsequent search at which time the rings were found.

We disagree. The record simply does not support such a conclusion. The rings, pants and shirt were seen next to Williams at the time he was discovered in the closet hiding under the clothes. This was not a subsequent search. The items were in plain view when Williams was discovered. State v. Miller, 80 N.M. 227, 453 P.2d 590 (Ct.App.1969).

*Line-up Identification*

■ Approximately six hours after the robbery, defendant and Williams were placed in a line-up with two Negro male police officers. All were dressed in white coveralls and were barefoot. Ms. Redak positively identified Williams but could not identify defendant, Wade. She did, however, tentatively identify one of the police officers (Officer James) as being the other robber.

At the hearing on the motion to suppress the line-up identification, the two officers who participated in the line-up, defendant and Williams were asked by defense counsel to stand before the trial court. They all testified as to their own height—Defendant Wade, 5 feet 5 inches; Williams, 5 feet 9 inches; Officer James, 5 feet 9½ inches; Officer Weaver, 6 feet. Trial counsel then stated that the two police officers were older, 24 and 26, and the defendants were 20. A witness who saw the line-up stated that both officers "have very light skin and both defendants have very dark skin. * * * "

One of the officers who participated in the line-up testified that at the time of the line-up he probably made the statement that "it was the most unfair line-up" he had ever seen. He also stated he had been in not more than five line-ups and had never viewed a line-up.

The trial court in denying the motion to suppress the line-up identification stated:

"* * * I didn't think that the height discrepancies or the discrepancies with regard to the—to the color were such as to taint the line-up. * * *"

Defendant contends that from the foregoing facts "* * * that the line-up was unduly suggestive and tainted with error." We disagree.

Defendant has recited the testimony of various witnesses which would sustain his position. However, as we have heretofore recited, there was additional evidence before the trial court. State v. McCarty, 82 N.M. 515, 484 P.2d 357 (Ct.App.1971) and State v. Torres, 81 N.M. 521, 469 P.2d 166 (Ct.App.1970).

Affirmed.

It is so ordered.

· SUTIN and LOPEZ, JJ., concur.