593 P.2d 760

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Paul MOORE, Defendant-Appellant.**

**No. 3760.**

Court of Appeals of New Mexico.

March 22, 1979.

John B. Bigelow, Chief Public Defender, Michael J. Dickman, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Michael A. Kauffman, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Moore appeals his conviction of receiving stolen property. All but one of the issues listed in the docketing statement were abandoned because not briefed. *State v. Ortiz*, 90 N.M. 319, 563 P.2d 113 (Ct.App. 1977). The one issue presented involves a warrantless search of Moore's residence. We discuss: (1) the initial stop, (2) entry into the house, and (3) seizure of stolen goods.

### The Initial Stop

The Rainey residence was burglarized on the evening of July 30th; three rifles and their cases were among the items taken in the burglary. Checking the neighborhood for possible witnesses, Patrolman Brown was informed by a neighbor that the neighbor "had seen one of Mr. Rainey's renters there earlier in the evening." The renter had been seen at the front door. The neighbor described the person seen; Rainey stated the description matched Moore, who lived in one of Rainey's "rent houses" one block behind Rainey's residence. Brown went to the rent house in an attempt to contact Moore, "there was no answer."

On July 31st, Brown drove into the neighborhood and observed a light green Dodge pickup in front of the rent house. When he came back to the rent house, fifteen to twenty minutes later, the pickup was gone.

On August 1st, Brown observed the pickup in front of the rent house and stopped to talk to Moore. The man who came to the door said Moore was not at home; however, the person who came to the door matched the description of Moore which Brown had received from the neighbor. Brown then did two things. He ran a registration check on the pickup, which had expired Texas license plates. The report was that the pickup was registered to someone in Texas. He contacted Rainey to "confirm identity of Mr. Moore . . . ." Brown described the man who came to the door; Rainey informed Brown, "that was Mr. Moore." Brown went back to the rent house; the pickup was gone and no one answered the door.

On the evening of August 1st, Brown observed Moore driving toward the rent house. Brown pulled in behind Moore in front of the rent house. It was 8:45 p. m. Brown asked if Moore was at home, Moore stated that he wasn't and wanted to know what Brown wanted. Brown asked Moore "if he had any identification on him"; Moore said that he did not.

The above facts show Brown had a reasonable basis for stopping Moore to investigate his identity. Defendant does not claim to the contrary. *State v. Galvan*, 90 N.M. 129, 560 P.2d 550 (Ct.App.1977).

*Entry Into the House*

When asked for identification, Moore got nervous and was pacing around. Brown asked Moore to come to the police department and answer some questions. Moore asked, "for what." "I told him first off it was evident that he didn't have a driver's license if he didn't have any identification on him" and also told Moore that the "pick-up registration was expired . . .." Moore stated he would go in the house and get some identification; Brown permitted him to do so.

Gunnells, in the process of moving out of his residence, had stayed with Moore at the rent house one or two nights prior to August 1st. Gunnells was a passenger in the pickup on the evening of August 1st and was present when Brown asked Moore for identification.

Moore and Gunnells walked from the pickup toward the rent house. Brown saw Moore and Gunnells "standing at the front door"; it appeared to Brown "that they both went inside the house." Brown then called Lt. Vinyard, his supervisor, on the radio. When Moore did not reappear in "about two minutes" Brown went up to the house. Brown asked Gunnells "where Mr. Moore had went and he said last time that I saw him, and he pointed over his shoulder, said that he was headed for the back door."

Vinyard arrived at 8:58 p. m.; Brown reported "what had happened previously with Mr. Moore . . .." Vinyard and Brown went to the door of the rent house. Vinyard asked, and Gunnells confirmed, that he had been staying there. Vinyard asked Gunnells if Moore had gone into the house. "And he [Gunnells] thumbed, a thumbing motion and nodded his head like to the back bedroom of the house where Mr. Moore had gone." In addition to motioning with his thumb and head, Gunnells said that Moore "went to the back." Vinyard took Gunnells thumbing motion as a "[g]ester to enter the house." Vinyard and Brown entered the house.

While searching the rent house for Moore, stolen property was discovered. Defendant claims this warrantless search was unlawful because the officers were not justified in entering the house. Defendant asserts the only exceptions conceivably applicable to the warrantless entry were "consent" and "hot pursuit," and neither was applicable in this case. We do not discuss "consent".

Defendant contends that "hot pursuit" allows the police, acting without a warrant, to pursue and arrest a "suspected felon" who retreats within a house. He claims "hot pursuit" is inapplicable because no arrest had been set in motion when he fled, and that he was not a suspected felon. Defendant asserts that his offenses, at most, were the misdemeanors of concealing identity, see § 30–22–3, N.M.S.A.1978, and driving without a driver's license, see §§ 66–5–16 and 66–5–37, N.M.S.A.1978. The State asserts that "hot pursuit" is not limited to suspected felons; that the police could pursue and arrest defendant because he had committed misdemeanors in the presence of Brown. Neither the defendant's nor the State's position sufficiently reflects the facts in this case.

A man of Moore's description had twice been identified as Moore; twice Moore had denied to Brown that he was Moore. Brown was pursuing the question of Moore's identity when he allowed Moore to enter the house to obtain identification. Brown thought Moore had entered the rent house when in fact Moore "jumped the fence next to the front door" and fled. Why was the question of identification being pursued? Because a man of Moore's description, and referred to as one of Rainey's renters, had been observed at the Rainey residence on the evening of the burglary. When Moore failed to reappear, Brown suspected him of the burglary.

■ When Brown and Vinyard entered the house they were in "hot pursuit" of a suspected felon who had twice concealed his identity. The term "hot pursuit" describes what the officers were doing, but the term, in itself, does not justify the entry. The justification depends on why the officers were in "hot pursuit". See *United States v.*

*Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The justification for a "hot pursuit" warrantless entry depends on exigent circumstances and the purpose for the entry.

■ What amounts to exigent circumstances is a fact question which depends upon practical considerations of the individual case. "The circumstances must be evaluated from the point of view of a prudent, cautious and trained police officer." *State v. Sanchez*, 88 N.M. 402, 540 P.2d 1291 (1975). *People v. Ramey*, 16 Cal.3d 263, 127 Cal.Rptr. 629, 545 P.2d 1333 (1976) states:

> "[E]xigent circumstances" means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers.

New Mexico exigent circumstances cases come easily within this definition. *State v. Sanchez*, supra; *In re One 1967 Peterbilt Tractor, Etc.*, 84 N.M. 652, 506 P.2d 1199 (1973); *State v. Kaiser*, 91 N.M. 611, 577 P.2d 1257 (Ct.App.1978); *State v. Hansen*, 87 N.M. 16, 528 P.2d 660 (Ct.App.1974).

■ There were exigent circumstances in this case. The man who had been identified as being at the scene of the burglary and had twice denied his identity, had, with permission, entered the rent house to obtain identification, but had failed to reappear. The emergency situation, requiring swift action, was to determine if Moore was still in the house.

The purpose of the entry must be valid. The discussion of purpose is often in terms of probable cause to arrest, see *United States v. Santana*, or probable cause to search, see *Warden, Maryland Penitentiary v. Hayden*, supra. This does not mean there may not be other valid purposes for entry, for example, a reasonable belief as to

a medical emergency. In this case, however, there was probable cause to arrest Moore for the burglary on the basis of the two identifications that Rainey made to Brown. In addition, there was probable cause to search the rent house to forestall the imminent escape of Moore, the suspected burglar. See *In re One Peterbilt Tractor, Etc.*, supra, and *State v. Hansen*, supra.

Because we hold there was probable cause to arrest Moore and probable cause to search for Moore as a suspected felon, we do not consider the State's argument that the valid purpose was to arrest Moore because he committed a misdemeanor in the presence of the officer. On the merits of this claim, see *Phillips v. State*, 483 P.2d 1377 (Okl.Cr.1971).

*Seizure of Stolen Goods*

■ Upon entry, Vinyard identified himself as a police officer and called out for Moore. There was no response. The officers went through each of the rooms "looking in the closets" for Moore. They came to the last room, a bedroom. Vinyard first checked the closet, then looked under the bed. As Vinyard knelt down to look under the bed: "[T]here was a brown leather case protruding out between the mattress and the box springs two or three inches. Observed it as being the end of a gun butt . . . .." After ascertaining that Moore was not under the bed, Vinyard "pulled the mattress up and there appeared to be three cases or weapons concealed in three different types of cases."

Vinyard put the mattress back down, called for Brown and inquired the reason Brown stopped Moore "other than just traffic stop. And he [Brown] said, 'Residential burglary.'" Vinyard had Brown describe the weapons; Brown described two rifles. Vinyard removed the gun cases from under the mattress and opened them. Two of the rifles met Brown's description. The three cases, with rifles, were taken into custody. Rainey identified the three cases, with rifles, as his. A search warrant was then obtained; other items stolen from Rainey

were discovered during this search and seized.

It is uncontradicted that Vinyard observed what he thought was a protruding gun butt during a good faith search for Moore. See *State v. Alderete*, 88 N.M. 619, 544 P.2d 1184 (Ct.App.1976). Vinyard then lifted the mattress and saw three rifle cases. Defendant seems to argue that it was improper for Vinyard to lift the mattress. We disagree. Verification that a rifle case was, in fact, under the mattress was a common-sense security precaution for an officer present in the residence of a suspected burglar who had not been found. See *Warden, Maryland Penitentiary v. Hayden*, supra; *Rodriquez v. State*, 91 N.M. 700, 580 P.2d 126 (1978).

Once three rifle cases were observed under the mattress, Vinyard verified that rifles had been stolen from the Rainey residence. He then opened the gun cases and found they contained rifles matching the description of rifles that had been stolen. Defendant states: "While there may well have been probable cause to believe the closed cases contained contraband, the officers could not open them without first obtaining a warrant." Defendant relies on *Rodriquez v. State*, supra, and the quotation in *Rodriquez* taken from *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). We, of course, must apply the limitations of those decisions when applicable. Here they are not applicable because the "incident to arrest" aspect is missing.

*United States v. Chadwick*, supra, and *Rodriquez v. State*, supra, dealt with personal property in the exclusive control of the police so that there was no danger that the arrestee might gain access to the property to seize a weapon or destroy evidence. In this case we do not have an arrestee; Moore had not been found. Because Moore had not been found, the officers could properly open the gun cases to verify that the cases did in fact contain the stolen rifles, and to know that the rifles were in fact in their possession so that they could not be used against the officers. This was for the officers' own security. See *Rodriquez v. State*, supra.

The search warrant obtained on the basis of the stolen rifles and cases seized during the search for Moore was proper. Accordingly, we do not consider whether there was probable cause for the search warrant independent of that recovered stolen property.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.