644 P.2d 1050

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Abie Van CHAVEZ, Defendant-Appellant.**

**No. 5463.**

Court of Appeals of New Mexico.

April 13, 1982.

Certiorari Denied May 11, 1982.

Thomas J. Horne, P. C., Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

■ Issues listed in the docketing statement, but not briefed, were abandoned.

*State v. Brown*, 95 N.M. 3, 617 P.2d 1324 (Ct.App.1980). The two issues briefed concern: (1) warrantless arrest of defendant in his home; and (2) disclosure of impeaching information.

*Warrantless Arrest in the Defendant's Home*

The victim had just left a bar. Defendant forced the victim into his truck, drove the victim to his home, beat her and committed three acts of criminal sexual penetration in the first degree. The trial evidence revealed the crimes were not only violent, but brutal; torture was involved. There is evidence of permanent physical injury to the victim. The abduction occurred at approximately 10:30 p. m.; the victim escaped around 3:30 a. m. of the same night when the defendant dozed off.

The victim went to a nearby house where she was taken in. The police were called. Police officers were dispatched to investigate a possible rape at 3:34 a. m. After speaking to and viewing the injured victim, officers went to the house described by the victim, verified that a vehicle in the driveway belonged to the offender described by the victim, and verified that the house was the residence of the offender by a name plate on the door. The front door was ajar, as the victim indicated she had left it.

Officers rang the front door bell and identified themselves; there was no response. They knocked on the door; being ajar, .the door swung open. Before entering, by use of flashlights, they observed blood on the floor and on garments in the living room.

Officers entered the house and searched for defendant; he was located in a bedroom and arrested. In searching for defendant, the officers observed various items which were admitted as evidence—bloody sheets, bloody newspapers, a bloody towel, the victim's shoes. There were also photographs of the scene showing the location of the above items. There is no claim, on appeal, that the items were viewed as a result of an exploratory search for these evidentiary items. The items were observed during the search for defendant. Defendant moved to suppress the above items; the trial court denied the motion to suppress.

*Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), held that the Fourth Amendment to the United States Constitution prohibits the police from making a warrantless, nonconsensual entry into a suspect's home to make a routine felony arrest. We applied *Payton* in *State v. Devigne*, 96 N.M. 561, 632 P.2d 1199 (Ct.App.1981). Defendant contends that *Payton* requires the suppression of the evidence because there was a warrantless, nonconsensual entry in this case; we disagree.

*Payton* involved a routine felony arrest. The issue is whether defendant's arrest was a routine arrest. If exigent circumstances were involved, the arrest was not routine. See United States Supreme Court cases discussed in *State v. Devigne*, supra.

A valid warrantless entry into a defendant's home, for the purpose of arresting the defendant, also requires probable cause to arrest. See *State v. Moore*, 92 N.M. 663, 593 P.2d 760 (Ct.App.1979). Compare *State v. Ledbetter*, 88 N.M. 344, 540 P.2d 824 (Ct.App.1975). Defendant concedes the officers had probable cause to arrest him; the question is the existence of exigent circumstances.

The trial court denied the motion to suppress on the basis that exigent circumstances justified the entry into defendant's home. *State v. Sanchez*, 88 N.M. 402, 540 P.2d 1291 (1975), provides the guidelines for appellate review of the trial court's ruling. *Sanchez* states:

> The questions of "good faith belief" and "exigent circumstances" are questions of fact for the trial court to determine, and the findings of the trial court in these regards are entitled to be accorded the same weight and given the same consideration as is generally accorded a trial court's findings by appellate courts. [Citations omitted.] Substantial evidence is the measure of proof, or the quality and quantity of the evidence, required to

support the findings of the trial court. [Citations omitted.] In determining whether the evidence is substantial in support of the claimed justifiability of the entry, the facts and circumstances of each case must be considered. [Citation omitted.] The exigency of the circumstances, as with the probable cause required to make a search reasonable under the circumstances, depends on practical considerations. [Citation omitted.] The circumstances must be evaluated from the point of view of a prudent, cautious and trained police officer.

What are exigent circumstances? *State v. Moore,* supra, quoted the following from *People v. Ramey,* 16 Cal.3d 263, 127 Cal. Rptr. 629, 545 P.2d 1333 (1976):

" '[E]xigent circumstances' means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers."

New Mexico "exigent circumstances" decisions come within the definition. See *State v. Trujillo,* 95 N.M. 535, 624 P.2d 44 (1981), and *State v. Moore,* supra, and cases cited in those decisions.

There is no claim that danger to life or danger of serious damage to property or the imminent destruction of evidence was involved in this case. The emergency, relied on by the prosecutor, was the imminent escape of a suspect.

■ Defendant would limit an imminent escape emergency to a fact situation involving "hot pursuit". Some sort of chase is involved in a pursuit. *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). However, an imminent escape emergency is not limited to a chase situation. Footnote 3 to *United States v. Santana,* supra.

*James v. Superior Court of Tulare Cty.,* 87 Cal.App.3d 985, 151 Cal.Rptr. 270 (1978), applying the definition of exigent circumstances stated in *People v. Ramey,* supra, held:

(a) That when the prosecution relies on exigent circumstances it "must be able to point to specific and articulable facts that reasonably justify the conclusion that the exigent circumstance relied upon for the warrantless arrest is imminent. To hold otherwise would permit the exception to swallow the rule."

(b) " 'Imminent' means: * * * 'about to happen'; * * * 'ready to take place'; 'near at hand' * * *."

We agree with these holdings.

The application of the above holdings, in *James,* supra, is not clear. Both of the following statements are from *James* :

[a] There is nothing in the record to indicate that James *was preparing* to escape before the door was opened.

[b] There is no suggestion from the record that there was a strong reason for *believing* that an attempted escape of James was near at hand and would take place unless James was swiftly apprehended. [Our emphasis.]

■ The specific and articulable facts that reasonably justify the conclusion of exigent circumstances are facts known to the police officers. *State v. Moore,* supra. Thus, in considering the imminence of an escape, the issue is *not* whether the suspect was in fact preparing to escape; the issue is whether, on the basis of facts known to a prudent, cautious and trained officer, the officer could reasonably conclude that swift action was needed to forestall an escape. *State v. Sanchez,* supra.

■ In this case, the officers acted without delay. They entered defendant's residence twenty minutes after their first contact with the victim. Compare *People v. Ramey,* supra. Within this twenty-minute period, by seeing and talking to the victim, the officers were informed that brutal crimes had occurred. Within this twenty-minute period, they had ascertained that the offender lived at the place where the

crimes occurred. The officers knew that the offender had a means of escape at hand; the pickup truck, used to bring the victim to the house, was parked in the driveway. The officers could reasonably believe the offender was in the house by the victim's report of her escape. The officers' concern with the possibility of escape was evidenced by posting an officer at the back door. The officers could reasonably believe that if the offender became aware that the victim had escaped, the offender would try to escape because of the violence of the crimes. See *Weddle v. State*, 621 P.2d 231 (Wyo.1980).

On the basis of the foregoing, the officers could reasonably conclude "that there was a need that could not brook the delay incident to obtaining a warrant," even if a warrant could have been obtained at that time of night (about which there is nothing in the record). *Dorman v. United States*, 435 F.2d 385 (D.C.Cir.1970). See *State v. Hansen*, 87 N.M. 16, 528 P.2d 660 (Ct.App.1974).

*State v. Cook*, 26 Ariz.App. 198, 547 P.2d 50 (1976), states:

In the instant case Officer Hanley, upon arriving at the scene, was informed by the victim that she had just been kidnapped and that the man had attempted to rape her. She stated this had occurred in apartment C and that when she escaped and began pounding frantically on another apartment door, appellant turned and fled in the direction of apartment C. The officer reacted immediately and reasonably. He entered apartment C and searched for appellant. Under the circumstances of this case we believe the officer was in "hot pursuit" of a suspected felon and no search warrant was necessary in order to effect a lawful entry into appellant's apartment.

The entry of the officers into defendant's home was in the nature of a hot pursuit. The trial court could properly find, on the evidence presented, that there were exigent circumstances; substantial evidence supports that finding. That the defendant was asleep when found does not detract from the conclusion drawn by the officers from the facts known to them. The motion to suppress was properly denied.

*Disclosure of Impeaching Information*

Prior to trial, defendant moved for disclosure of impeaching information. At the hearing on this motion, defendant argued that the motion was not intended to overlap on the general discovery rule, that the motion went "a half step further than the rule of law relating to exculpatory evidence." Defendant contended that the State was required to disclose impeaching evidence on the same basis as it was required to disclose exculpatory evidence. Defendant contends the denial of this motion violated due process and also violated R.Crim.Proc. 27, N.M. S.A.1978 (1980 Repl.Pamph.).

This issue is presented to us in the abstract; there is no claim that the State failed to disclose anything required to be disclosed; there is no claim that defendant has been prejudiced by a nondisclosure. *State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979); *Chacon v. State*, 88 N.M. 198, 539 P.2d 218 (Ct.App.1975). Accordingly, there is nothing to be decided under this issue. On the merits, compare the requirements of R.Crim.Proc. 27(a)(6), supra, with *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

The judgment and sentences for kidnapping and three counts of criminal sexual penetration in the first degree are affirmed.

IT IS SO ORDERED.

WALTERS, C. J., and NEAL, J., concur.