632 P.2d 1199

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Yves Leon DEVIGNE,
Defendant-Appellant.**

**No. 5051.**

Court of Appeals of New Mexico.

Aug. 11, 1981.

Ann Steinmetz, Kennedy & Steinmetz, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Clare E. Mancini, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

The two appellate issues involve (1) defendant's confession after a warrantless arrest, and (2) the length of defendant's probation.

Albuquerque detectives, investigating a series of residential burglaries, acquired information that implicated defendant. Some two weeks after acquiring this information, the detectives arrested defendant in his residence, during daylight, without a warrant. Thereafter, defendant made two oral inculpatory statements and one written confession.

Defendant moved to suppress all of his statements. Among the grounds relied on were: (a) that he was not properly advised of his right to remain silent; (b) that he did not waive his right to remain silent; and (c) that his statements were involuntary. After an evidentiary hearing, the trial court refused to suppress the statements on any of these three grounds; these grounds are not involved in this appeal.

### Confession After Warrantless Arrest

Defendant also sought to suppress his statements on the basis they were made after a warrantless arrest. Defendant contended that the April, 1980 decision of the United States Supreme Court in *Payton v. New York* and *Riddick v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), required suppression of his statements. The trial court refused to suppress the statements.

Subsequently, upon agreement by the prosecution and defense, the case was tried to the court upon stipulated facts and defendant was found guilty of five residential burglaries. The tape of this trial reveals that defendant's written confession was admitted into evidence over defendant's objection. Inasmuch as other parts of the stipulation have not been included in the appellate record, we do not know whether any use was made of defendant's oral statements. However, the admission of defendant's written confession over defendant's objection, preserved the issue of the applicability of *Payton and Riddick*.

The trial court's letter rejecting defendant's claim under *Payton* suggests that a way be found to distinguish that decision. The letter states:

The Payton case to which Defendant refers may be distinguishable from the facts in this case. The Payton decision was six to three, with a very strong dissent being filed. The dissenting Opinion of course is not the law, but it emphatically sets out the possibility of severely hampering the effective law enforcement. The necessity of authorizing a warrantless arrest should be made on the surrounding circumstances of each individual case.

I believe the circumstances in this case should be compared to Payton by our Supreme Court.

At the time of the warrantless arrest, *Payton and Riddick* had not been decided; those decisions were some six months after the arrest. However, by the time defendant was indicted, they had been decided, and there is no suggestion that the law stated in those decisions does not apply to defendant's case.

As the above-quoted portion of the trial court's letter suggests, *Payton and Riddick* do require an analysis of the arrest procedures followed in this case. We recognize that the decision is known as *Payton v. New York*. Heretofore we have referred to both *Payton and Riddick* because the facts of *Riddick* are closer to those in defendant's case. Hereinafter we refer to the decision only as *Payton*; the following facts, however, are from *Riddick*.

The victim of two armed robberies identified Riddick in June, 1973; the police learned Riddick's address in January, 1974. In March, 1974, police went to Riddick's residence. When Riddick's young son opened the door, the police saw Riddick. The police entered and arrested Riddick without a warrant.

In defendant's case, the police made a warrantless arrest of defendant, in his residence, some two weeks after obtaining

probable cause that defendant had committed some of the burglaries being investigated. Asked if he could have secured an arrest warrant, the detective answered: "We probably could have. Myself and Detective Nagy did not feel it was necessary. We had ample probable cause."

*Payton* holds:

[T]he Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment [citations omitted], prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest.

■ The majority opinion in *Payton* emphasizes that the arrest occurred in the defendant's residence, thus no "public place" arrest was involved. The majority also point out that consent to enter was not involved and that exigent circumstances were not involved. Under *Payton* the existence of probable cause does not validate the warrantless arrest of a person in that person's residence absent consent to enter or exigent circumstances.

The trial court referred to the strong dissent in *Payton*. That dissent relied on common-law restrictions to regulate warrantless arrests, in these words:

Today's decision ignores the carefully crafted restrictions on the common-law power of arrest entry and thereby overestimates the dangers inherent in that practice. At common law, absent exigent circumstances, entries to arrest could be made only for felony. Even in cases of felony, the officers were required to announce their presence, demand admission, and be refused entry before they were entitled to break doors. Further, it seems generally accepted that entries could be made only during daylight hours. And, in my view, the officer entering to arrest must have reasonable grounds to believe, not only that the arrestee has committed a crime, but also that the person suspected is present in the house at the time of the entry.

No matter how attractive this dissent may be to the reader, it is not the law.

The majority opinion in *Payton* was reaffirmed in *Steagald v. United States*, —— U.S. ——, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), in these words:

The question before us is a narrow one. The search at issue here took place in the absence of consent or exigent circumstances. Except in such special situations, we have consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant. See *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Johnson v. United States*, 333 U.S. 10, 13–15, 68 S.Ct. 367 [368–369], 92 L.Ed. 436 (1948). Thus, as we recently observed, "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York, supra* [445 U.S.] at 590, 100 S.Ct. 1371 [at 1382], 63 L.Ed.2d 639.

*Payton* applies to defendant's case; how it applies has yet to be determined.

■ Under *Payton*, defendant's warrantless arrest was illegal unless the detectives entered defendant's residence either under exigent circumstances or with consent. Nothing suggests there were exigent circumstances. Whether the detectives entered with defendant's consent is a factual issue which has not yet been determined by the trial court. See *State v. Bidegain*, 88 N.M. 466, 541 P.2d 971 (1975); *State v. Miller*, 80 N.M. 227, 453 P.2d 590 (Ct.App. 1969).

If the detectives' entry was with consent, then defendant's arrest was legal and there is no basis for suppressing defendant's confession. If, however, there was no consent, the arrest was illegal. If the arrest was illegal, another factual issue is involved; that factual issue is whether defendant's written confession was sufficiently an act of free will to purge the primary taint of the illegal arrest.

■ In this case there is no appellate claim that defendant was not informed of his constitutional rights before confessing, and no claim as to an involuntariness issue involving the privilege against self-incrimination. The issue involves the Fourth Amendment to the United States Constitution—the right of defendant to be secure, in his residence, against an unreasonable seizure. To establish compliance with the Fourth Amendment, the causal chain between the illegal arrest and the subsequent confession must be broken. The causal chain is broken if the confession was sufficiently an act of free will to purge the primary taint.

*Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), explains:

> The question whether a confession is the product of a free will ... must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse .... The *Miranda* warnings [of constitutional rights] are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances ... and, particularly, the purpose and flagrancy of the official misconduct are all relevant.... The voluntariness of the statement is a threshold requirement.... And the burden of showing admissibility rests, of course, on the prosecution.

Not having determined whether the detectives' entry was with or without consent, the trial court did not reach the "purge the taint" issue. If the trial court should determine that the arrest was illegal, it must then determine if the taint has been purged. If the taint was not purged, then the confession should have been suppressed. If the confession should have been suppressed, its admission at trial was error and a new trial is required.

■ The evidence at the motion to suppress hearing showed two oral statements which preceded the written confession. These oral statements must be considered in determining whether the causal chain between an illegal arrest (if so found) and the written confession has been broken. See *State v. Austin*, 91 N.M. 586, 577 P.2d 894 (Ct.App.1978).

*Length of Probation*

Defendant was sentenced to three years imprisonment on each of the five counts. Two of the sentences were to be served consecutively, for a total of six years. The other three sentences were to be served concurrently. "Execution of sentence is suspended and Defendant is ordered to be placed on probation for Six (6) years".

Defendant asserts that the maximum length of his probation cannot exceed five years. The State contends the maximum length of probation is three years on each count, thus a total probation of six years is permissible.

■ When a sentence has been suspended "the total period of suspension shall not exceed the maximum length of the term of imprisonment which could have been imposed by sentence against the defendant for the crime of which he was convicted." Section 31–20–7(B), N.M.S.A.1978. The maximum imprisonment for each of the burglaries, see *State v. Gonzales*, (Ct.App.) 96 N.M. 556, 632 P.2d 1194 (1981), was three years. Section 31–18–15(A)(3), N.M.S.A. 1978 (1980 Cum.Supp.). Thus, the maximum suspension was three years for each of the burglaries.

Section 31–20–5, N.M.S.A.1978, states:

> When a person has been convicted of a crime for which a sentence of imprisonment is authorized, and when the district court has deferred or suspended sentence, it shall order the defendant to be placed on probation for all or some portion of the period of deferment or suspension if the defendant is in need of supervision, guidance or direction that is feasible for the probation service to furnish; provided, however, the total period of probation shall not exceed five years.

Section 31–20–5 states two limitations upon the length of probation. First, the probation cannot exceed the period of suspension. Inasmuch as the maximum period of suspension for each burglary could not exceed three years, the maximum probation period for each burglary was three years. Compare *State v. Crespin*, 90 N.M. 434, 564 P.2d 998 (Ct.App.1977). Second, the proviso to § 31–20–5 states "the total period of probation shall not exceed five years."

The dispute goes to the meaning of the limitation stated in the proviso. Defendant asserts the proviso limits the maximum period of probation in the aggregate; the State contends "the five year limitation is to be applied to each crime for which a defendant is convicted. . . . [J]ust as the trial court may impose consecutive prison terms, . . . so may it impose consecutive probation terms." While we agree that the five-year limitation applies to each crime, the question is whether it also applies in the aggregate.

Both the internal wording of § 31–20–5 and the legislative history suggest that the five-year limitation applies in the aggregate.

The wording of § 31–20–5, until the proviso is reached, limits the probation to the length of the suspended sentence for "a crime". The proviso refers to a "total" period of probation without reference to "a crime". If the Legislature intended the limitation in the proviso to apply only to each crime, the proviso would have been worded "the total period of probation, *for each crime*, shall not exceed five years." Inasmuch as the proviso contains no words limiting the word "total", the internal wording of § 31–20–5 supports defendant.

Laws 1957, ch. 172, § 1, dealt with suspended sentences and probation. That law stated: "The period of probation, together with any extension thereof, shall not exceed five years." This statute, enacted subsequent to 1953, does not, of course, appear in original Volume 6 to N.M.S.A.1953. Nor does it appear in Replacement Volume 6 issued in 1964 because, by the time of Replacement Volume 6, this statute had been repealed upon enactment of the Criminal Code. Unless one has access to supplements to original Volume 6, between 1957 and 1963, this statute cannot be found in the 1953 Compilation.

The Criminal Code was enacted by Laws 1963, ch. 303. Section 30–1 of the Criminal Code identifies statutes that were repealed. Laws 1957, ch. 172, § 1, is one of the laws repealed. By process of elimination, it can be ascertained that the 1957 law had been compiled, in supplements to the 1953 Compilation, as § 40–1–11.

The Report of Criminal Law Study Interim Committee (1961–62) identifies what had been compiled, in the 1953 Compilation as § 40–1–11, as the source of § 29–17 of the Criminal Code, which is § 31–20–5 of the 1978 Compilation. The Committee Report states the policy of the Committee to retain provisions of existing criminal laws in the proposed code whenever possible. In sum, the Legislative Committee Report is to the effect that language in the proviso to § 31–20–5 (the total period of probation shall not exceed five years) was not a change in the prior law (the period of probation . . . shall not exceed five years). This legislative history supports defendant.

On the basis of the internal wording of § 31–20–5, and the legislative history, we hold that the proviso of § 31–20–5 means that the maximum probation for the five sentences imposed upon defendant, for convictions that occurred at one trial, was five years.

We neither affirm nor reverse the convictions and sentences. The cause is remanded to the trial court to:

(1) determine whether the detectives entered defendant's residence with consent;

(2) if there was a nonconsensual entry, and thus an illegal arrest, determine whether the confession was purged of the taint of the illegal arrest;

(3) if the trial court determines that the confession was properly admitted, it is to correct the probation period by reducing that period to five years; and

(4) if the trial court determines that the confession should be suppressed, then defendant is to be given a new trial.

The above determinations are to be made on the present record without further evidentiary hearing.

IT IS SO ORDERED.

HERNANDEZ, C. J., and HENDLEY, J., concur.