The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date:** July 24, 2023

**NO. S-1-SC-38147**

**RUFINO TORRES,**

> Petitioner,

v.

**DWAYNE SANTISTEVAN, Warden,**

> Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Angie K. Schneider, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly M. Chavez Cook, Appellate Defender
Santa Fe, NM

Liane E. Kerr, LLC
Liane E. Kerr
Albuquerque, NM

for Petitioner

Hector H. Balderas, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Respondent

**OPINION**

**VIGIL, Justice.**

{1}     This case comes before us on a petition for writ of certiorari under Rule 12-501 NMRA to review Petitioner Rufino Torres's district court habeas corpus proceedings. Petitioner contends that the judgment and sentence which required him to serve consecutive, i.e., "stacked," five-year terms of probation was illegal. We agree. Furthermore, we determine that consolidation of four separate cases resulted in a single judgment and sentence, and when the district court determined that Petitioner had completed serving his sentence and probation in one case, the legal effect was that the determination applied to the entire judgment and sentence. We therefore conclude that Petitioner is entitled to be released from custody of the New Mexico Department of Corrections immediately upon the issuance of our mandate. We also determine that Petitioner's three conspiracy convictions violate double jeopardy.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

{2}     Four different indictments were filed against Petitioner in the Twelfth Judicial District Court in Otero County charging Petitioner with sixteen crimes which occurred between June 1, 2010, and June 3, 2010. The indictment in cause number D-1215-CR-2010-0270 (-270 case) charged four offenses: that on June 2, 2010,

Petitioner burglarized two storage units located at the same address; and that on the same day Petitioner conspired to commit nonresidential burglary and received stolen property. The indictment in cause number D-1215-CR-2010-0290 (-290 case) charged three offenses: that on June 2, 2010, Petitioner committed larceny of property that was on display at the Alamogordo Chamber of Commerce Museum; engaged in a conspiracy to commit the larceny; and received the property that was stolen from the museum. The indictment in cause number D-1215-CR-2010-0269 (-269 case) alleged six offenses: that on June 2, 2010, Petitioner burglarized a storage unit and conspired to commit nonresidential burglary; and that on June 3, 2010, Petitioner burglarized three other storage units and received stolen property. Finally, the indictment in cause number D-1215-CR-2010-0271 (-271 case) alleged that on June 1, 2010, Petitioner committed three offenses: that he broke into and entered a self-storage business, burglarized the business, and stole property from the business.

{3} The State then filed a motion to consolidate the four cases for plea and disposition. The district court granted the motion and ordered the cases "consolidated into [the -269 case] for plea and disposition." Thereafter, unless we note otherwise, every subsequent pleading was filed in all four cases. This did not in any way alter the fact that the cases were consolidated. In the plea and disposition agreement Petitioner agreed to plead guilty to all sixteen of the original charges

"because he is in fact guilty of the foregoing charges." There was no agreement as to sentence, and Petitioner understood he was exposed to a twenty-seven year term of imprisonment, a period of mandatory parole for each offense, and mandatory fines and fees.

{4}  Petitioner was sentenced on February 4, 2011. Petitioner received a twenty-seven year term of imprisonment, and there is no issue about whether the term of imprisonment imposed on each count was correct. The total term of twenty-seven years resulted from the fact that the district court imposed a sentence of incarceration for every crime charged in each case. Thus, in the -270 case Petitioner was sentenced to a term of imprisonment of six years; in the -290 case he was sentenced to a term of imprisonment of seven years and six months; in the -269 case he was sentenced to a term of imprisonment of nine years; and in the -271 case he was sentenced to a term of imprisonment of four years and six months, for a total of twenty-seven years.

{5}  In addition, the district court ordered that the sentences in each case be served consecutively. Specifically, the district court ordered that the sentence in the -290 case run consecutively to the -270 case, that the sentence in the -269 case run consecutively to the -290 case, and that the sentence in the -271 case run consecutively to the -269 case. In other words, Petitioner was ordered to serve the sentence in the -270 case in full before beginning to serve the sentence in the -290

3

case, and to serve the sentence in the -290 case in full before beginning to serve the sentence in the -269 case, and to serve the sentence in the -269 case in full before beginning to serve the sentence in the -271 case.

{6} The district court then ordered that all but 364 days of the sentence in the -270 case, apparently the time served, be suspended and that Petitioner be placed on probation for a period of five years; that the sentence of incarceration in the -290 case be suspended and that Petitioner be placed on probation for five years "after the completion" of the -270 case; that the sentence of incarceration in the -269 case be suspended and that Petitioner be placed on probation for thirty days "after the completion" of the -290 case; and that the sentence in the -271 case be suspended and that Petitioner be placed on probation for thirty days "after the completion" of the -269 case. It is this feature of consecutive probationary terms and Petitioner's multiple probation violations which give rise to the primary issue in this case.

{7} Petitioner violated probation multiple times over the years following his sentencing. The original five-year period of probation was from February 8, 2011, to February 7, 2016. On June 11, 2013, the district court revoked Petitioner's probation, reinstated probation, and imposed a new probation term of five years, beginning June 11, 2013. Subsequently, on September 27, 2013, the district court once again revoked Petitioner's probation, reinstated probation, and imposed a new

five-year probationary term from September 27, 2013, to September 26, 2018. On May 23, 2014, the district court revoked Petitioner's probation for the third time. This order was different than the preceding orders because no new five-year term of probation was imposed. Instead, the district court reinstated probation for the period of September 27, 2013, to September 26, 2018. On July 15, 2016, the district court revoked Petitioner's probation a fourth time. In this order, the district court continued Petitioner's probation under the terms and conditions set forth in the original judgment and sentence with the additional condition that Petitioner serve a six-month sanction in the Otero County Detention Center. The resulting order of probation states that Petitioner is "under probation supervision until 2/14/2017 *or until further order of the* [*c*]*ourt*" (emphasis added).

{8}     On February 21, 2017, the district court filed its order of discharge on suspended sentence. This order recites that the period of suspension expired on February 4, 2017. The order of discharge changes the termination date from February 14, 2017, to February 4, 2017, but is nevertheless consistent with the latter possibility in the order of probation stating that Petitioner is "under probation supervision until 2/14/2017 *or until further order of the* [*c*]*ourt*" (emphasis added). The order of discharge continues, stating that "pursuant to [NMSA 1978,] Section 31-20-8 [(1963)], [Petitioner] is relieved of any obligation imposed upon him[] by

5

said order of the [c]ourt and has satisfied his[] criminal liability for the crime charged herein." The order of discharge was filed only in the -270 case.

{9} Following the order of discharge, the State filed yet another petition to revoke probation on February 26, 2018. This petition was not filed in the -270 case because the State said Petitioner's sentence in the -270 case "was completed on February 4, 2017." The petition alleged that Petitioner's then-current probation in the -290 case was from February 4, 2017, to February 4, 2022. On May 9, 2018, the district court entered its order revoking probation and committing Petitioner to the Department of Corrections. After giving Petitioner credit for six years in the -270 case and credit for time served in the -290 case, the district court calculated that the balance on Petitioner's sentence was 7,220 days. The district court ordered Petitioner to serve 2,292 days of those days in the custody of the Department of Corrections. The balance of 4,928 days was suspended, and Petitioner was ordered to serve a new five-year term of probation. This order was filed in the -269, -271, and -290 cases.

{10} Acting pro se, on October 17, 2018, Petitioner filed a habeas corpus petition in the district court. Petitioner asserted he was illegally sentenced, did not receive the proper credit calculations, and received ineffective assistance of counsel. The district court appointed an attorney to review the illegal sentence and credit

6

calculation claims, but did not order the attorney to review the ineffective assistance of counsel claim.[1]

{11}     The district court entered a procedural order on Petitioner's petition for habeas corpus in which the district court recalculated Petitioner's credit for presentence confinement. The district court concluded that Petitioner had not been awarded 245 days of credit for presentence confinement in the -270 case, with the result that the February 21, 2017, order of discharge on suspended sentence should have stated that Petitioner's sentence in the -270 case expired on June 4, 2016, not February 4, 2017. The result of the correction was that the balance on Petitioner's sentence was 6,975 days instead of 7,220 days. Petitioner was still ordered to serve 2,292 of those days in the custody of the Department of Corrections, with the balance suspended under a new five-year term of probation. The district court otherwise denied Petitioner's requested habeas corpus relief.

{12}     On February 7, 2020, the district court entered an amended order revoking probation and committing Petitioner to the Department of Corrections, reiterating that Petitioner was discharged from the -270 case on June 4, 2016, setting forth the

---

[1]In light of our disposition of this case, we do not address the ineffective assistance of counsel issue in this opinion.

new calculations, and ordering Petitioner's incarceration in the Department of Corrections for 2,292 days, followed by the new five-year term of probation.

{13}    Petitioner requested certiorari review pursuant to Rule 12-501, which we granted. For the reasons stated herein, we reverse the district court, grant habeas corpus relief, and order Petitioner's immediate release from custody upon issuance of the mandate.

## II.    DISCUSSION

{14}    We begin by addressing the consequence of consolidating Petitioner's district court cases. We then address the error in stacking consecutive five-year terms of probation with the result that Petitioner's custody is now illegal. Finally, we address Petitioner's argument that his three convictions for conspiracy violate double jeopardy.

### A.    Legality of Petitioner's Sentence and Custody

{15}    Petitioner maintains that he always believed he was facing a total of only five years of probation, despite his total sentencing exposure equating to twenty-seven years. Petitioner asserts that the total period of probation the district court could have imposed was five years, and that the district court lacked authority to impose a new five-year probation period following each probation violation. In response, the State argues the district court properly placed Petitioner on new terms of probation

following each revocation. When, as here, a case "involves issues concerning the district court's interpretation and application of the sentencing law, it is subject to de novo review." *State v. Brown*, 1999-NMSC-004, ¶ 8, 126 N.M. 642, 974 P.2d 136.

{16} We first address the legal effect of consolidation on Petitioner's four separate cases. Since at least 1953, the rule has been that "if the separate informations were properly consolidated they would thenceforth be considered as one information containing separate counts." *State v. Compton*, 1953-NMSC-036, ¶¶ 41-42, 57 N.M. 227, 257 P.2d 915 (considering the number of peremptory challenges a defendant is allotted following consolidation of two cases). Subsequently, in *State v. Paschall*, 1965-NMSC-008, ¶ 3, 74 N.M. 750, 398 P.2d 439, we considered the effect of consolidating separate criminal informations for trial. We said consolidation "means trying the several different criminal informations, charging separate offenses, at one time and before one jury—a procedure which involves separate verdicts respecting each offense charged and tried." *Id.*

{17} The current rules of criminal procedure lack explicit provisions about the effect of consolidation. However, the local rules of several districts, which we have approved, give direction on the effect of consolidation. For example, when two or more cases are consolidated, all the pleadings filed after consolidation are docketed

9

and placed in the file with the lowest case number. *See* LR1-108(B) NMRA; LR3-204(C) NMRA; LR5-213(B) NMRA. Further, "[t]he case number of each case consolidated shall appear in the caption of all pleadings, motions, and other papers filed after consolidation." LR5-213(C); *see also* LR3-204(D). Based on the procedural history of this case and lack of explicit provisions outlining the effect of consolidation, we request that the appropriate rules committees define the effect of consolidation within our Rules of Criminal Procedure for the District, Metropolitan, and Magistrate Courts.

{18}     Here, Petitioner's four separate cases were "consolidated into [the -269 case] for plea and disposition." The legal effect was that upon consolidation, there was a single case, the -269 case, with multiple underlying charges. The order of consolidation ultimately resulted in a single judgment and sentence. However, despite consolidation, the judgment and sentence sets forth a separate probation period for each original case in which the probation terms were stacked. We now turn to whether this was permissible.

{19}     "When a person has been convicted of a crime for which a sentence of imprisonment is authorized and when the . . . district court has . . . suspended [the] sentence, it shall order the defendant to be placed on probation for all or some portion of the period of deferment or suspension . . . ." NMSA 1978, Section 31-20-5(A)

(2003). Critical to the case before us, the statute explicitly directs, "the total period of probation for district court shall not exceed five years." *Id*. Our Court of Appeals explained in *State v. Devigne*, 1981-NMCA-088, ¶¶ 28-33, 96 N.M. 561, 632 P.2d 1199, that when a period of probation is entered on a multiple count indictment at one trial, the district court cannot impose a total term of probation longer than five years. The Court of Appeals based its conclusion on the statutory text of Section 31-20-5 and the statute's legislative history. *Id.* ¶ 33. We agree with the Court of Appeals on this point, and hold that when two or more cases are consolidated for a plea and sentencing, if the district court in its discretion suspends all or part of the sentence only a single term of probation, not to exceed five years, can be imposed.

{20} That is not to say that a probationer cannot be required to serve more than five years on probation. When a probation violation "is established, the [district] court may continue the original probation or revoke the probation and either order a new probation with any condition provided for in Section 31-20-5 or [NMSA 1978, Section] 31-20-6 [(2007)] . . . or require the probationer to serve the balance of the sentence imposed or any lesser sentence." NMSA 1978, § 31-21-15(B) (2016). Thus, if all or a part of the sentence is suspended under a five-year term of probation, the district court may properly revoke probation and impose a new five-year period of probation if the defendant violates the terms and conditions of probation during the

11

original term of probation. *State v. Baca*, 2005-NMCA-001, ¶¶ 13-15, 136 N.M. 667, 104 P.3d 533. This case is an example of such a scenario. As explained subsequently herein, Petitioner properly served six years of probation.

{21} We disagree with Petitioner's argument that each of the district court's revocations and reinstatements of probation were illegal. The original probation term was from February 8, 2011 to February 7, 2016. Within that term, on June 11, 2013, the district court revoked and reinstated Petitioner's probation and imposed a new five-year term of probation from June 11, 2013 to June 10, 2018. Within this new term of probation, on May 23, 2014, the district court revoked and reinstated Petitioner's probation. However, the district court did not impose a new probationary term and opted to reinstate the existing term of probation which expired on September 26, 2018. Finally, within the existing term of probation, on July 15, 2016, the district court revoked Petitioner's probation and reinstated the probation with an additional condition that Petitioner serve six months in the Otero County Detention Center. Each of the foregoing times the district court revoked and reinstated probation, the district court complied with Section 31-20-5 and *Baca*, 2005-NMCA-001, ¶¶ 13-15. These were followed by the district court's order filed on February 21, 2017, that Petitioner's five-year probation ended on February 4, 2017. The

illegality of Petitioner's detention stems from what happened next under the structure of the stacked probation terms set forth in the judgment and sentence.

{22}    The February 21, 2017 order, which determined that Petitioner's five-year term of probation had expired was only filed in the -270 case. Correctly understanding that the judgment and sentence intended to impose stacked terms of probation, the State filed another petition to revoke probation in the -290 case, contending that the period of probation in this case started on February 4, 2017, and ended on February 4, 2022. Upon finding that Petitioner violated probation during this time, on April 25, 2018, the district court revoked probation and ordered Petitioner's incarceration in the Department of Corrections for 2,292 days, followed by another five-year term of probation. As noted previously herein, the district court later recalculated Petitioner's credit for presentence confinement (which resulted in an earlier termination of probation in the -270 case), but still ordered incarceration in the Department of Corrections for 2,292 days, followed by five years of probation. When the district court subsequently revoked Petitioner's probation, sentenced Petitioner to the Department of Corrections, and imposed a new five-year term of probation, those actions violated Section 31-20-5(A) as construed in *Devigne*, 1981-NMCA-088, ¶¶ 28-33. In fact, while Section 31-20-5(A) limits a term of probation to five years, the structure of the judgment and sentence here required Petitioner to

serve more than ten years of probation. The question remains: what relief is Petitioner entitled to receive?

{23} For the answer to this question, we look to the district court's February 21, 2017, order of discharge filed in the -270 case. The order provides:

> [Petitioner was] placed under the supervision of the Probation Division for a period of 5 year(s), 0 month(s), 0 day(s), as evidenced by a copy of the Judgment and Sentence entered [in] this case, and;

> It further appearing to the [c]ourt that the period of suspension expired on 2/4/2017 . . . .

> THEREFORE, IT IS ORDERED THAT pursuant to Section 31-20-8, . . . [Petitioner] is relieved of any obligation imposed upon him[] by said order of the [c]ourt and has satisfied his[] criminal liability for the crime charged herein.

{24} The order says two things: (1) Petitioner's five-year term of probation imposed by the judgment and sentence has "expired"; and (2) Petitioner "is relieved of any obligation imposed upon him[] by said order of the [c]ourt and has satisfied his[] criminal liability for the crime charged herein." As we already stated, the date that the probation expired was later changed from February 4, 2017, to June 4, 2016 (after the district court recalculated Petitioner's presentence confinement credits), but the order was not otherwise changed and remains in full force and effect. The fact that this order was only filed in the -270 case cannot change the fact that the four separate cases were "consolidated into [the -269 case] for plea and disposition."

The legal effect was that upon consolidation, there was a single case, the -269 case, with multiple underlying charges, which resulted in a single judgment and sentence.

**{25}** The first consequence of the order of discharge is that after February 4, 2017, the district court had no jurisdiction to revoke Petitioner's probation. Under New Mexico case law, Section 31-20-8 combined with Section 31-21-15(B) deprives district courts of jurisdiction to revoke probation once the probationary period has expired. *See State v. Ordunez*, 2012-NMSC-024, ¶¶ 2, 9, 283 P.3d 282 (concluding the district court lacked jurisdiction over the petition to revoke probation after the probationary term expired). The second consequence is that the district court order declaring that Petitioner "has satisfied his[] criminal liability for the crime charged herein" applies to the entire judgment and sentence. After February 4, 2017, Petitioner was no longer subject to the judgment and sentence. The core purpose of the writ of habeas corpus—to protect an individual from illegal custody or restraint—goes to the heart of this case. *Caristo v. Sullivan*, 1991-NMSC-088, ¶ 25, 112 N.M. 623, 818 P.2d 401 ("Because the writ of habeas corpus protects our most basic right of freedom from illegal restraint on personal liberty, the writ must be construed to afford a swift and imperative remedy in all cases of illegal restraint or confinement." (internal quotation marks and citations omitted)). Petitioner shall be immediately released from custody upon the issuance of our mandate in this case.

15

**B.      Double Jeopardy Violations**

{26}    Next, we address whether Petitioner's three convictions and sentences for conspiracy violate double jeopardy. The sentence imposed under a plea agreement can violate double jeopardy. *State v. Jackson*, 1993-NMCA-092, ¶¶ 10-11, 116 N.M. 130, 860 P.2d 772. Furthermore, the fact that we have determined Petitioner has served his sentence is no bar to our review of this claim. *See id*. ¶ 12 ("In New Mexico, 'double jeopardy may not be waived and may be raised . . . at any stage of a criminal prosecution, either before or after judgment.'" (quoting NMSA 1978, § 30-1-10 (1963))).

{27}    Petitioner argues his three conspiracy convictions violate double jeopardy because his conduct underlying the conspiracy convictions was unitary. The State argues that the conduct was not unitary because the convictions either involved different victims or occurred on different days. "This Court reviews claims involving alleged violations of a defendant's right to be free from double jeopardy de novo." *State v. Loza*, 2018-NMSC-034, ¶ 4, 426 P.3d 34.

{28}    Both the United States Constitution and the New Mexico Constitution guarantee that no person shall be "twice put in jeopardy" for the same offense. U.S. Const. amend. V; N.M. Const. art. II, § 15. Double jeopardy protects against successive prosecutions and multiple punishments for the same offense. *See*

16

*Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223. Multiple punishment cases are classified in one of two ways: double description cases or unit of prosecution cases. *State v. Gallegos*, 2011-NMSC-027, ¶ 31, 149 N.M. 704, 254 P.3d 655. In double description cases, "a single act results in multiple charges under different criminal statutes"; unit of prosecution cases arise when "an individual is convicted of multiple violations of the same criminal statute." *Id.* (internal quotation marks and citations omitted). Petitioner pleaded guilty to three conspiracy crimes under NMSA 1978, Section 30-28-2 (1979), so this is a multiple punishment case, and we therefore apply the unit of prosecution analysis. In analyzing a unit of prosecution claim, the relevant inquiry is "whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Swafford*, 1991-NMSC-043, ¶ 8.

{29} This Court originally applied the unit of prosecution analysis to the conspiracy statute, § 30-28-2, in *Gallegos*, 2011-NMSC-027, ¶¶ 43-64. The *Gallegos* Court inferred that based on the "text, history, and purpose of our conspiracy statute . . . the Legislature established . . . a rebuttable presumption that multiple crimes are the object of only one, overarching, conspiratorial agreement subject to one, severe punishment set at the highest crime conspired to be committed." *Id.* ¶ 55. The State may overcome this presumption of singularity, "but doing so requires the state to

17

carry a heavy burden." *Id.* To determine whether the presumption of singularity is overcome, *Gallegos* adopted a totality of the circumstances test. *Id.* ¶ 56. Under this totality of the circumstances test, we consider whether

> "(a) the location of the two alleged conspiracies is the same; (b) there is a significant degree of temporal overlap between the two conspiracies charged; (c) there is an overlap of personnel between the two conspiracies (including unindicted as well as indicted co-conspirators); and (d) the overt acts charged and (e) the role played by the defendant in the alleged conspiracies are similar."

*Id.* ¶ 42 (alterations, ellipsis, and citation omitted). We continue to rely on these factors from the *Gallegos* analysis in analyzing conspiracy double jeopardy cases. *State v. Comitz*, 2019-NMSC-011, ¶¶ 33-34, 443 P.3d 1130; *State v. Ortega*, 2014-NMSC-017, ¶ 27, 327 P.3d 1076.

{30} Since there was no trial, we consider only the limited facts contained in the statement of facts from Petitioner's guilty plea. *See Jackson*, 1993-NMCA-092, ¶¶ 11, 18 (considering only the facts established at the guilty plea hearing to determine if the sentence imposed under a plea agreement violated double jeopardy). The facts are as follows:

> On or about June 02 and 03, 2010, I did enter four separate locked storage units, located at 2801 Indian Wells Rd., Alamogordo, NM, without authorization or permission, with intent to commit a theft when I got inside and I conspired by words and acts together with another person to break into the units. . . .

On or about June 02, 2010, I did enter two different locked storage units, located at 3110 North Florida, Alamogordo, NM, without authorization or permission, with intent to commit a theft when I got inside and I conspired by words and acts together with another person to break into the units. . . .

On or about June 02, 2010, I did take and carry away two metal dyes and one Columbia Shuttle medallion, belonging to Tularosa Basin Historical Society (Mrs. Dolores Rogers), which had a market value of over $2500, and at the time the property was taken, intended to permanently deprive the owner of it and . . . I conspired by words and acts together with another person to take said property.

The two metal dyes and the medallion were stolen from the Alamogordo Chamber of Commerce Museum. We apply the factors from the *Gallegos* analysis to these facts from Petitioner's guilty plea.

{31} First—as to whether the conspiracies occurred at the same location—the statement of facts provides that the two conspiracies to commit nonresidential burglary and the conspiracy to commit larceny occurred at three separate locations: (1) four storage units at 2801 Indian Wells Road, (2) two storage units at 3110 North Florida, and (3) the Alamogordo Chamber of Commerce Museum. This first factor weighs towards finding separate conduct.

{32} Regarding the second factor—whether the conspiracies overlap in time— because all of the alleged conspiracies occurred on the same day, June 2, 2010, and because the State failed to introduce evidence of intervening conduct or distinct conspiratorial agreements, the State failed to satisfy its burden by showing "how this

19

Court can meaningfully distinguish between the three charged conspiracies in a way that would justify multiple punishment under the conspiracy statute." *Gallegos*, 2011-NMSC-027, ¶ 62; *see id.* ¶ 46 ("A single conspiracy can last for years, with many of its substantive offenses being completed during that time. . . . Furthermore, a conspiracy may mature and expand over time, adding more members and embracing additional criminal objectives without changing the fundamental nature of the single agreement." (internal quotation marks and citations omitted)). Even if we were to attempt to distinguish the discreet conspiracies temporally throughout that day, it does not follow that Defendant entered into a new conspiracy each time he committed burglary and larceny, and it "would be contrary to the plain language of our conspiracy statute, which punishes the act of combining with another, not the objects that were to be committed" to presume such a finding. *Id.* ¶ 62. Thus, the second factor weighs in favor of singularity.

{33} As to the third factor—whether there was the same or overlapping personnel—the record indicates Petitioner conspired with at least one other person. However, there is no conclusive evidence before this Court as to whether there was more than one other coconspirator. We conclude this third factor cannot be used to meaningfully weigh towards a finding of separate conduct or towards a finding of singularity.

{34}    Fourth, to determine whether defendant was charged with similar overt acts, we look to the statutory definitions of the criminal acts underlying the conspiracy convictions. NMSA 1978, Section 30-16-3(B) (1971), outlining the elements of nonresidential burglary, states: "Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony." "The crime of burglary is complete when there is an unauthorized entry with the necessary intent; the intent does not have to be carried out after entry." *State v. McAfee*, 1967-NMSC-139, ¶ 17, 78 N.M. 108, 428 P.2d 647. NMSA 1978, Section 30-16-1(A) (2006), outlines the elements of larceny: "Larceny consists of the stealing of anything of value that belongs to another." Moreover, as established in *McAfee*, the elements of burglary and larceny do not merge: "Since stealing is a necessary element of larceny but is not a necessary element of burglary, larceny is not necessarily involved in a burglary. . . . [A d]efendant could be convicted of and sentenced for both crimes." *McAfee*, 1967-NMSC-139, ¶ 18. Because the elements of nonresidential burglary and larceny do not have similar overt acts, this fourth factor weighs towards finding separate conduct.

{35} Fifth, looking as to whether Petitioner played a similar role in each conspiracy, the record establishes that Petitioner was the constant actor in each of the three conspiracies. This fifth factor weighs towards a finding of singularity.

{36} Thus, of the five factors, two factors weigh towards a finding of singularity, two factors weigh in favor of a finding of separate conduct, and one factor does not meaningfully affect the analysis. It is therefore untenable to conclude that there were three separate agreements in such a way that would justify multiple punishments under the conspiracy statute based on the limited factual record before us. The evidence does not demonstrate more than one agreement between two or more coconspirators nor that two conspirators made multiple agreements on or about June 2, 2010.

{37} In addition to the lack of facts, the presumption of singularity is the strongest barrier to concluding that there were three separate conspiracies. During the plea hearing and sentencing hearings, the State did not present more evidence to prove there were three separate agreements. Further, on appeal the State has not highlighted specific evidence in the record to overcome the presumption of singularity. Therefore, the presumption has not been rebutted and we hold that Petitioner's conspiratorial conduct was unitary.

**{38}** Thus, we turn to the proper remedy for violation of Petitioner's double jeopardy rights. In *Jackson*, the defendant appealed two consecutive sentences imposed for conspiracy which were imposed as a result of his guilty plea. 1993-NMCA-092, ¶¶ 1, 4, 8. The Court of Appeals agreed with the defendant that there was only one conspiracy. *Id.* ¶¶ 2, 21. Treating the appeal as a request to vacate the plea agreement, the Court of Appeals determined that the defendant was entitled to have his plea vacated only if the state agreed; alternatively, the state could agree to accept the sentence imposed, as corrected by the determination that there was only one conspiracy. *Id.* ¶ 24. Importantly, in *Jackson*, the defendant had not yet fully served his sentence. *Id.* ¶¶ 5, 8. In contrast, in this case, Petitioner has already served his sentence, including the probation term for one conspiracy conviction. Therefore, on remand, we direct the district court to enter an amended judgment and sentence vacating Petitioner's remaining two conspiracy convictions.

## III. CONCLUSION

**{39}** We grant habeas corpus relief. Petitioner shall be released from custody immediately upon the issuance of our mandate. The district court's order consolidating the four cases resulted in a single judgment and sentence. We reverse the district court because the subsequent February 21, 2017, order of discharge on suspended sentence, as amended, not only terminated Petitioner's probation but also

23

determined that Petitioner satisfied his criminal liability for the crimes charged, and discharged Petitioner from any obligation imposed by the judgment and sentence as of June 4, 2016. In addition, upon remand, the district court shall enter an amended judgment and sentence vacating two conspiracy convictions.

{40}    **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

_____

**C. SHANNON BACON, Chief Justice**

_____

**DAVID K. THOMSON, Justice**

_____

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice, concurring in part, dissenting in part**

**ZAMORA, Justice (concurring in part and dissenting in part).**

{41} I agree with the majority that orders of consolidation result in a single judgment and sentence, that only a single term of probation can be imposed when two or more cases are consolidated for plea and sentencing, and that Petitioner should be immediately released from custody because he is no longer lawfully detained. *Maj. op.* ¶¶ 18-19, 25. But I cannot join the majority's opinion for two reasons. First, the Court's conclusion that a district court may order a defendant to complete a new five-year period of probation each and every time there is a probation violation, regardless of the severity of the alleged violation and regardless of how many years of probation the defendant has already served, is contrary to the plain language of NMSA 1978, Section 31-20-5(A) (2003). I also believe the Court should remand the double jeopardy issue to the district court. Petitioner did not raise double jeopardy below so no record on the issue was developed in the district court. Moreover, Petitioner's counsel neglected to sufficiently address double jeopardy in the brief in chief and at oral argument. Accordingly, I respectfully concur in part and dissent in part.

## I. ORDERING A NEW FIVE-YEAR PROBATIONARY PERIOD IS NOT PERMITTED UNDER SECTION 31-20-5(A) EACH TIME A DEFENDANT VIOLATES PROBATION

{42} In its analysis of the probation issue, the majority relies in part on *State v. Baca*, 2005-NMCA-001, 136 N.M. 667, 104 P.3d 533. This Court has yet to review the holding in *Baca*, which the majority relies on to conclude that pursuant to NMSA 1978, Section 31-21-15(B) (2016), a district court can start a new five-year period of probation each time a defendant commits a probation violation until the Court no longer has jurisdiction. *Maj. op.* ¶¶ 20-21. Because I believe this result contravenes legislative intent and that the *Baca* Court's interpretation of Section 31-21-15(B) conflicts with the plain language of Section 31-20-5(A), I would overrule *Baca* and hold that a district court may not start a new five-year period of probation each time a defendant is found to have violated probation.

{43} Here, the district court sentenced Petitioner in 2011 to a total term of twenty-seven years based on his guilty plea to charges that were consolidated for purposes of plea and disposition. *Maj. op.* ¶¶ 3-4. The court suspended part of Petitioner's initial sentence and he was ordered to a period of probation. *Maj. op.* ¶ 7. Petitioner violated his probation three times prior to the expiration of this term. *Maj. op.* ¶ 7. In each instance, the district court revoked and reinstated Petitioner's probation pursuant to Section 31-21-15(B). *Maj. op.* ¶ 7. However, following the first and

26

second revocations, the district court started an entirely new five-year period of probation, setting new expiration dates of June 10, 2018, and September 26, 2018, respectively. *Maj. op.* ¶ 7.

{44} The majority concludes that each order starting a new five-year period of probation was proper and that it was only when the district court revoked Petitioner's probation on May 9, 2018, that it acted outside its authority. *Maj. op.* ¶¶ 20-22. While I agree that the district court did not have jurisdiction to issue its May 9, 2018, revocation order, I disagree that its June 11, 2013, and September 27, 2013, orders extending Petitioner's probationary term beyond the five-year statutory limit established in Section 31-20-5(A) were lawful. The legality of Petitioner's probation term depends upon the interplay between two statutes bearing on the imposition of probation: Section 31-20-5(A) (the probation statute) and Section 31-21-15(B) (the probation revocation statute). Section 31-20-5(A) provides:

> When a person has been convicted of a crime for which a sentence of imprisonment is authorized and when the magistrate, metropolitan or district court has deferred or suspended sentence, it shall order the defendant to be placed on probation for all or some portion of the period of deferment or suspension if the defendant is in need of supervision, guidance or direction that is feasible for the corrections department to furnish. *Except for sex offenders as provided in* [*NMSA 1978,*] *Section 31-20-5.2* [*(2003)*]*, the total period of probation for district court shall not exceed five years* . . . .

*Id.* (emphasis added). Section 31-21-15(B) states that, following a revocation application:

> The court shall then hold a hearing, which may be informal, on the violation charged. If the violation is established, *the court may continue the original probation or revoke the probation and either order a new probation with any condition provided for . . . or require the probationer to serve the balance of the sentence imposed or any lesser sentence.* If imposition of sentence was deferred, the court may impose any sentence that might originally have been imposed, but credit shall be given for time served on probation.

*Id.* (emphasis added).

{45} The majority asserts that the district court's orders restarting Petitioner's probation were lawful because "the district court complied with Section 31-20-5 and *Baca*, 2005-NMCA-001, ¶¶ 13-15" in issuing them. *Maj. op.* ¶ 21. However, by its plain language, Section 31-20-5(A) establishes that "[e]xcept for sex offenders as provided in Section 31-20-5.2 NMSA 1978, *the total period of probation for district court shall not exceed five years*." (Emphasis added). Accordingly, the majority's conclusion that the district court's orders restarting Petitioner's probation term were lawful rests on the Court of Appeals' decision in *Baca*. Because I believe *Baca* was wrongly decided, I cannot join the majority's endorsement of that holding in this opinion.

{46} Our primary purpose in interpreting statutes is to give effect to the Legislature's intent. *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047. The

primary indicator of that intent is the plain language of the provision. *Id.* Therefore, where the language of a statute is plain, our inquiry is at an end. *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. We "will not depart from the plain language of the statute unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or . . . deal with an irreconcilable conflict among statutory provisions." *Maestas v. Zager*, 2007-NMSC-003, ¶ 9, 141 N.M. 154, 152 P.3d 141 (internal quotation marks and citation omitted).

{47} In my view, the language of Section 31-20-5(A) is unambiguous. The statute mandates that a probationary period is not to exceed five years in total. *See Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 22, 146 N.M. 24, 206 P.3d 135 ("[W]hen construing statutes, 'shall' indicates that the provision is mandatory.").

{48} In *Baca*, the Court of Appeals nonetheless held that Section 31-20-5(A) could not mean what it says because, in the Court's estimation, the plain meaning of the provision would contravene the legislative purpose behind the probation statutes. *Baca*, 2005-NMCA-001, ¶¶ 16-17, 19. In that case, the defendants argued that Section 31-20-5(A) prohibits imposition of more than five years of probation in the aggregate. *Id.* ¶¶ 8, 11. The State asserted that the statute prohibits only the

29

imposition of a probationary term of greater than five years at initial *sentencing*, arguing that nothing in Section 31-20-5(A) prevents a defendant from serving longer than five years overall if there are probation violations. *Id.* ¶ 18. The Court agreed with the State. *Id.*

{49} According to the *Baca* Court, adherence to the plain language of Section 31-20-5(A) would frustrate the purposes of the probation statutes in three ways. First, the Court asserted that the word "total" in Section 31-20-5(A) could not be construed to mean five years in the aggregate without rendering the option to "order a new probation with any condition" in Section 31-21-15(B) a "nullity." *Id.* ¶¶ 13, 18. Second, the *Baca* Court concluded that the defendants' proposed construction would permit a defendant to violate probation multiple times without consequence. *Id.* ¶ 19. Finally, the Court concluded that a new five-year period of probation furthered the legislative purpose of enhancing the rehabilitation of probationers by offering additional flexibility to district courts beyond either continuing the probation or revoking probation and sending the defendant to jail. *Id.* ¶ 20.

{50} I disagree. The Court of Appeals' conclusions in *Baca* are predicated on a mistaken premise. The Court appeared to believe that the option to "revoke the probation and . . . order a new probation with any [authorized] condition" under Section 31-21-15(B) *must* mean "revoke the existing probation and restart the

30

probationary term" because, if it did not, then it would be indistinguishable from the first option (continue the probation). *See Baca*, 2005-NMCA-001, ¶ 18. However, "revoke the probation and . . . order a new probation with any [authorized] condition" is readily susceptible to a different interpretation that would distinguish it from continuing probation. *See* § 31-21-15(B). A court could order a "new probation with any condition provided for" under Sections 31-20-5 and -6 even if it did not extend the probation term if the court attached new or different conditions. Moreover, if the original probationary term were for a period shorter than five years, "order[ing] a new probation term" could mean imposing a longer probationary term, so long as it did not exceed five years in total when combined with the prior probation term. In other words, Section 31-21-15(B) could be construed to authorize a district court to: (1) continue the probation as is for the balance of the existing probation term, which cannot be longer than five years; (2) revoke the probation and order a new probation for the balance of the term with different and/or additional conditions or for a longer term, so long as the total probation period does not exceed five years; or (3) revoke the probation and incarcerate the defendant for the balance of the sentence or some lesser term.

{51} This is a more harmonious reading of Sections 31-21-15(B) and 31-20-5(A) than that adopted by the majority and *Baca* because it gives effect to the plain

31

language of both statutes. *See State v. Farish,* 2021-NMSC-030, ¶ 11, 499 P.3d 622 (stating that the Court reads statutes as a whole and that the Legislature "is presumed not to have used any surplus words in a statute; each word must be given meaning"). Recall that Section 31-20-5(A) provides, in part, that "[e]xcept for sex offenders as provided in Section 31-20-5.2 NMSA 1978, the *total period of probation* for district court shall not exceed five years . . . ." (Emphasis added.) The dictionary definition of the word "total" indicates it most commonly signifies an entire amount, including an amount produced by adding or summing constituent parts. *Total*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2004) (defining "total" as "a product of addition: sum," "an entire quantity"); *see State v. Vest*, 2021-NMSC-020, ¶ 14, 488 P.3d 626 (noting that this Court "consult[s] common dictionary definitions" when giving words "their ordinary meaning"). Thus, a plain reading of Section 31-20-5(A) indicates that a defendant's entire probationary term—including any and all partial probationary periods—must not exceed five years. By contrast, the *Baca* Court's interpretation of the probation statutes renders the word "total" superfluous to this provision. Such a construction is disfavored by New Mexico law. *State v. Juan*, 2010-NMSC-041, ¶ 39, 148 N.M. 747, 242 P.3d 314 ("A statute must be construed so that no part of the statute is rendered surplusage or superfluous." (internal quotation marks, brackets, and citations omitted)).

{52}    The interpretation of Section 31-21-15(B) that I propose would also resolve the *Baca* Court's second concern: that a probationer could repeatedly violate probation and simply run out the clock on the original probation term without consequence. *Baca*, 2005-NMCA-001, ¶¶ 19-20. On my reading of the statute, a defendant who continued to violate probationary conditions would always be subject to incarceration or to the imposition of new or more restrictive conditions until his or her probation term ran out. Or, if the probationary term imposed at sentencing were for a period of less than five years, the district court could extend it so long as the overall term did not exceed five years. In other words, the district court would not be without options to address a probationer who committed repeat violations.

{53}    In sum, each of the Court of Appeals' concerns in *Baca* may be addressed by construing the option to "start a new probation" under Section 31-21-15(B) to mean that a district court may revoke a defendant's probation and order a new probation for the balance of the existing probationary period with new or different conditions, or order a longer probation period so long as the total period of probation does not exceed five years. Each of these options provides a clear mechanism by which a district court may reconsider and recalibrate a defendant's probation to enhance its rehabilitative potential. *See State v. Rivera*, 2004-NMSC-001, ¶ 21, 134 N.M. 768, 82 P.3d 939 ("Sections 31-20-5 and 31-21-15 [are] indicative of the Legislature's

intent to give trial courts broad discretion to sentence defendants to probationary terms and strictly monitor their compliance with an eye toward the goal of prompt and effective rehabilitation"). By contrast, it is not at all clear how the *Baca* Court's reading of the statute—which authorizes a district court to simply extend its jurisdiction over a defendant rather than reconsider the rehabilitative purposes of the probation conditions—does anything to advance the legislative purpose of our probation statutes. "The broad general purposes to be served by probation are education and rehabilitation. . . . The conditions of probation are directed to that end." *State v. Baca*, 1977-NMCA-030, ¶ 10, 90 N.M. 280, 562 P.2d 841.

{54}     Even if there were an ambiguity in the probation statutes, I do not believe that the *Baca* Court's interpretation of the interplay between Sections 31-20-5 and 31-21-15 is either necessary or desirable to give effect to the Legislature's intent in enacting them. To the contrary, the interpretation advanced by *Baca* and endorsed by the majority in this opinion could result in several absurd sentencing outcomes. For example, a defendant (like Petitioner) charged with multiple counts in a consolidated case could serve *decades* of probation if a district court is permitted to start a new five-year period of probation each time a defendant violates probation, as occurred in this case. And of course a new five-year period of probation could start again and again upon a finding of a violation, rendering the five-year limit stated

in Section 31-20-5(A) barely a suggestion, much less a requirement. Moreover, while all agree that Petitioner could not be sentenced to more than five years' probation at initial sentencing, regardless of the court's overall jurisdiction, *maj. op.* ¶ 19, the *Baca* Court's interpretation of Section 31-21-15 allows for an actual probation period spanning many times that length. Surely, this cannot be what the Legislature intended.

{55} Further, to the extent that there remains "insurmountable ambiguity" about the Legislature's intent, such doubts should be resolved in favor of lenity toward the defendant. *State v. Tafoya*, 2010-NMSC-019, ¶ 23, 148 N.M. 391, 237 P.3d 693 (internal quotation marks and citation omitted); *see United States v. Bass*, 404 U.S. 336, 347 (1971) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." (internal quotation marks and citation omitted)). Applying the rule of lenity is important for two reasons, both of which are of significance in this case. First, the law must provide a fair warning "in language that the common world will understand, of what the law intends to do if a certain line is passed." *Bass*, 404 U.S. at 348 (internal quotation marks and citation omitted). Next, "because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity." *Id.*; *see also United States v. Simpson*, 319

F.3d 81, 86 (2nd Cir. 2002) (applying the rule of lenity to sentencing guidelines because one of the purposes of the rule of lenity is "to maintain the proper balance between Congress, prosecutors, and courts" (internal quotation marks and citation omitted)).

{56}     Finally, in my view, the Court of Appeals' reading of the probation statutes in *Baca* relied in part on an insupportable reading of *State v. Devigne*, 1981-NMCA-088, 96 N.M. 561, 632 P.2d 1199. According to the *Baca* Court, *Devigne* offered no support for the proposition that Section 31-20-5(A) imposes a five-year cap on the total probation that may be served because *Devigne* "stands for the principle that the maximum period of probation that a district court may impose *at sentencing* is a total of five years, . . . not that five years is the total amount of time a defendant *can serve on probation*, regardless of the number of violations." *Baca*, 2005-NMCA-001, ¶ 18 (emphasis added).

{57}     In *Devigne*, the defendant "was sentenced to three years imprisonment on each of five counts." 1981-NMCA-088, ¶ 22. The court suspended the sentence and

36

ordered six years of probation. *Id.* The defendant argued that Section 31-20-5[2] prohibited the imposition of a probation term in excess of five years. *Id.* ¶ 23. Based on the plain language of the statute, the *Devigne* Court agreed with the defendant that "the maximum length of *his probation* cannot exceed five years," *id.* (emphasis added), and held that Section 31-20-5 establishes "that the *maximum probation* for the five sentences imposed upon defendant, *for convictions that occurred at one trial*, [is] five years." *Id.* ¶ 33 (emphasis added).

{58} The Court of Appeals in *Baca* read *Devigne* as holding only that the five-year limitation period applied to the probation term imposed *at initial sentencing*, not that a probation term could not be restarted and therefore lengthened during the probationary period. *Baca*, 2005-NMCA-001, ¶ 18. The *Baca* Court adopted this interpretation of *Devigne* based on the concerns already identified. *Id.* ¶¶ 18-20. However, there is nothing in the *Devigne* opinion—including its holding—that suggests the Court intended to distinguish between a probationary term imposed at

---

[2]*Devigne* concerned an earlier version of Section 31-20-5, but the two provisions are nearly identical and there is nothing in the legislative history of Section 31-20-5 that suggests the change enacted in 2003 was intended to modify the effect of the five-year limitation on probation. *Compare* § 31-20-5(A) (1977), *with* § 31-20-5(A) (2003). The provision was almost certainly amended to account for the enactment of the sex offender parole statute, Section 31-20-5.2, which was enacted in the same legislative session. *See* 2003 N.M. Laws, 1st Spec. Sess., ch. 1, § 7.

sentencing and the period of probation actually served by a defendant. *See Devigne*, 1981-NMCA-088, ¶¶ 23, 33. Nor is there anything in the plain language of Section 31-20-5 that suggests the five-year limitation applies only to the probation imposed at sentencing. Section 31-20-5 (referring to "the total period of probation."). Contrary to the *Baca* Court's strained reading of the decision, in my opinion the *Devigne* Court properly held that "the maximum probation for the five sentences imposed upon defendant, for convictions that occurred at one trial, was five years." *Devigne*, 1981-NMCA-088, ¶ 33.

{59}    I would apply that principle here. Petitioner's probationary period should have ended after five years, thereafter depriving the district court of authority to revoke his probation. I concur in the majority's conclusion that Petitioner should be immediately released from custody.

## II.    THE DOUBLE JEOPARDY CLAIM WAS NOT ADEQUATELY DEVELOPED

{60}    Petitioner did not raise the issue of double jeopardy in his pro se Petition for Writ of Certiorari. Instead, this Court sua sponte raised the issue in the Order granting the petition. Despite our raising the issue, Petitioner neglected to adequately develop an argument in his brief in chief or at oral argument. Where a conviction arises from a guilty plea and there is no factual record developed at trial, "[w]e place the burden on the defendant, the party raising the double jeopardy challenge, to

provide a sufficient record for the court to determine unitary conduct and complete the remainder of the double jeopardy analysis." *State v. Sanchez*, 1996-NMCA-089, ¶ 11, 122 N.M. 280, 923 P.2d 1165. This higher burden provides fundamental fairness to the State, which "must have the opportunity to contest [the d]efendant's version of the facts." *Id.* Here, the majority faults the State for failing to "highlight[] specific evidence in the record to overcome the presumption of singularity," *maj. op.* ¶ 37, but in my opinion, the State was deprived of an opportunity to develop a record below because the issue was not raised in the district court.

{61} "Courts risk overlooking important facts or legal considerations when they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailored the case to fit within their legal theories." *N. M. Dep't of Hum. Servs., Income Support Div. v. Tapia*, 1982-NMSC-033, ¶ 11, 97 N.M. 632, 642 P.2d 1091. Because the issue was not adequately developed on appeal and the State was deprived of its opportunity to present evidence showing that the conduct at issue may not have been unitary, I believe the matter should have been remanded to the district court to determine in the first instance whether a double jeopardy violation exists. Accordingly, I respectfully dissent from the majority's conclusion that Petitioner's three conspiracy convictions violate the prohibition on double jeopardy. *Maj. op.* ¶¶ 1, 37-38.

_____

**BRIANA H. ZAMORA, Justice**